PER CURIAM.
This cause is before this Court as a matter of attorney discipline under the Integration Rule of The Florida Bar. We have exclusive jurisdiction. Art. V, § 15, Fla. Const.
Respondent in the above-styled disciplinary proceedings has not timely filed a petition for review of the referee’s report pursuant to article XI, Rule 11.09(3)(a), Florida Bar Integration Rules.
We adopt the referee’s findings of fact and further adopt the recommended discipline of disbarment. Fla. Bar Integr. Rule, art. XI, Rule 11.09(3)(f).
The findings of fact as quoted from the referee’s final report are:
During February, 1980, Respondent represented a client one, Louis Sambataro (hereinafter referred to as “Sambataro”) who held a second mortgage as president and sole stockholder of Meadowbrook Corporation as to certain property, Lots 1, 2, & 3 of Meadowbrook Ranches located in Hollywood, Florida. In February, 1980 the Respondent advised Sambataro that he had a party interested in purchasing some or all of Sambataro’s lots. The Respondent requested Sambataro to sign a blank statutory warranty deed transferring the lots in question and told Sam-bataro that he would fill in the blank spaces when a final agreement was reached with the interested parties. Sambataro signed such a deed on or about February 15, 1980. The deed, signed by Sambataro, was then filled out to be purportedly sold to Motivational Management Services, Inc., (hereinafter referred to as “Motivational”).
Running parallel with the Sambataro episode was a seemingly unrelated transaction in which the Respondent had been engaged with a Mr. Samuel Herman (hereinafter referred to as “Herman”), an out-of-state attorney for Motivational. Two years before Sambataro had signed the deed, which eventually was filled in to transfer the property to Motivational, the Respondent or an agent acting in his behalf, had delivered four statutory warranty deeds to Herman transferring certain property from Paga Investments, Inc., (hereinafter referred to as “Paga”) to Motivational. At that time the Respondent had personally assured Herman that the warranty deeds were free from liens or encumbrances. In fact, there were many liens and title encumbrances on the property transferred to Motivational by Paga which Herman advised Respondent of almost immediately after the transfer. For almost two years Herman attempted to get the Respondent to clear up the liens and encumbrances to no avail. Finally, in November, 1979, Herman advised the Respondent he would be in Florida on February 13, 14 & 15, 1980 and wanted to meet with him so that his client could either buy back the property transferred to Motivational by Paga or alternatively have a transfer of “good” property and free of liens.
On or about February 15, 1980, the Respondent or his agent filled in the blank warranty deeds signed by Samba-taro with the legal description of the lots Sambataro owned. About the same time the Respondent met with Herman at Respondent’s office and delivered to Herman the completed original copy of the statutory warranty deed that Sambataro had signed in blank.[1]
A short time after Sambataro had signed the blank warranty deed he requested the Respondent to return the original of the deed to him.[2] Respondent first advised Sambataro that he could not locate the deed but that he would bring *243 the original to Sambataro when he found it.
Within a short time thereafter, Respondent gave Sambataro a xerox copy of the so-called “original” deed which Sambata-ro purportedly had signed. At the time the Respondent delivered the xerox copy of the deed to Sambataro, the Respondent knew the original deed had been given to Herman without Sambataro’s knowledge or consent.
On or about March 1, 1980, Respondent delivered to Sambataro a warranty deed which he represented to be a completed deed of the one Sambataro had signed in blank in Respondent’s office in February, 1980. Across the face of the deed was the word “void”. A large “X” had been placed on the deed and the signature crossed out. Thus the Respondent led Sambataro to believe the crossed-out deed was a nullity when, in fact, the original deed signed in blank by Samba-taro and then filled out by Respondent or his agent had been given to Herman by the Respondent or his agent which was a fraud perpetrated on Sambataro. The Referee also duly considered and believed in addition to the testimony of Sambata-ro, and the questioned document examiner, G. Russell Walsh, as to the forged Sambataro signature on the “void” deed.
I find ... that the Respondent gave false testimony under oath to the Seventeenth Judicial Circuit Grievance Committee “C” regarding material and concise matters, to-wit: Herman had no knowledge of the location and existence of the critical deed describing lots 1,2 & 3 signed by Sambataro when, in fact, the Respondent had given the deed to Herman as Herman so testified.
******
It is the opinion of the Referee that the Respondent manifested a cavalier attitude, offering no explanation for his conduct, nor any excuses or mitigating circumstances nor did the Respondent demonstrate any awareness that he had perpetrated a fraud on his client nor indicate any remorse or contrition for his actions. I recommend that the Respondent be disbarred from the practice of law in Florida.
Based on the foregoing, we approve the findings and recommendation of the referee. Clyde Manspeaker is disbarred from the practice of law, effective immediately. Costs of these proceedings in the amount of $2,312.64 are assessed against Manspeaker.
It is so ordered.
ADKINS, Acting C.J., and BOYD, OVERTON, McDonald and EHRLICH, JJ., concur.

 These deeds were given to Herman to ameliorate the encumbered property transferred from Paga to Motivational.

 Sambataro had no knowledge of, nor did he authorize the transfer of his property to Motivational.