534 So.2d 1159 (1988)
THE FLORIDA BAR, Petitioner, Cross-Respondent,
v.
Terence T. O'MALLEY, Sr., Respondent, Cross-Petitioner.
No. 70495.
Supreme Court of Florida.
December 8, 1988.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and David M. Barnovitz, Bar Counsel, Ft. Lauderdale, for petitioner, cross-respondent.
Nicholas R. Friedman of Friedman, Baur, Miller & Webner, P.A., Miami, for respondent, cross-petitioner.
PER CURIAM.
This disciplinary proceeding is before us for consideration of a referee's report finding professional misconduct. Both sides have filed petitions for review challenging the report. We have jurisdiction. Art. V, § 15, Fla. Const. We agree with the recommendation of guilt, but for the reasons *1160 given below we impose enhanced disciplinary measures.
A criminal defendant, Kersten, sought to meet bail of $1,000,000. The bail bondsman arranged for the issuance of surety bonds in that amount upon delivery to the surety of certain liquid assets as collateral. The surety then determined that an additional $100,000 in liquid assets was required to constitute "chase money" in case Kersten were to leave the jurisdiction. Attorney Pendino was hired to represent Kersten in securing the posting of the additional collateral. Pendino dealt first with the bail bondsman, whom he refused to let hold the collateral. He then spoke with Ted Aubuchon, an officer of Pioneer Bonding & Insurance Agency, Inc., which was an agent of American Druggist Insurance Company, the surety. Pendino also refused to let the surety hold the collateral; he insisted that it be entrusted to an attorney. Pendino and Aubuchon agreed that the property would be placed with O'Malley, the attorney for both Aubuchon and Pioneer. A simple one and one-half page escrow agreement was entered into by Pendino, Aubuchon, and O'Malley. It provided in part:
1. That the collateral of $57,500.00, U.S. Currency, and the following property of Gold and Silver representing approximately $42,500.00 (See Attached Schedule A), representing the total collateral of $100,000.00 shall be delivered this 13th day of January, 1984 to Terence T. O'Malley, Sr., Esquire, and said collateral shall be retained by Terence T. O'Malley, Sr., Esquire and remain in escrow in a safe deposit box until the American Druggist Insurance Company's Bonds are discharged, vacated or negated by the Circuit Court of Martin County, Florida, in the case of State of Florida vs. Paul E. Kersten, Case No. 83-897-CF (Towbridge).
2. That upon discharge of the security of American Druggist Insurance Company from the above mentioned case, the escrowed monies and property above mentioned (representing $100,000) shall be returned forthwith to Sam D. Pendino, Esquire without further authorization, and we herewith so direct.
Pendino and O'Malley placed the $100,000 in gold, silver, and cash in a safety deposit box on January 13, 1984. O'Malley was given sole control over the box. The escrow agreement was signed by Pendino and O'Malley on that date. Aubuchon signed several weeks later.
Later that day, January 13, O'Malley removed the cash from the safety deposit box. He used all the cash to purchase cashiers' checks made payable to Pioneer, and he delivered the checks to an employee of Pioneer. At a later date, he also removed the gold and silver and kept that property in some other place. When the criminal defendant, Kersten, was acquitted, Pendino sought return of the collateral. O'Malley balked, claiming he lacked authorization from his client, the surety. He suggested that Pendino file a friendly suit seeking return of the collateral so that O'Malley's obligations to his client could be clarified. Suit was filed and became intensely adversarial; it lasted several years. During the course of this litigation, O'Malley was deposed and gave the following testimony under oath:
Q. Where is the collateral now?
A. The collateral is in my possession.
Q. It is being held where?
A. In my possession.
... .

*1161 Q. Have you turned over ... Have you given up possession of any of the cash, or gold or silver?
A. I believe I have already answered that question.
Q. How about answering it one more time?
A. Collateral is in my possession.
... .
Q. Are you  In terms of the location of the collateral, is anybody else, other than yourself, in possession of the collateral?
A. No. It's in my care, custody and control.
... .
Q. Did you ever remove anything from the safety deposit box?
A. No. Well, nothing that relates to this law suit. There were other documents in that safety deposit box.
... .
Q. And you are saying that you never turned it over to anybody? You have kept it yourself?
A. I think I have already answered that question.
Q. I am correct?
A. Pardon me?
Q. I am correct in that?
A. Yes. You are correct in that.
The parties to this civil litigation eventually reached a settlement agreement whereby O'Malley returned the gold and silver to Pendino and paid Pendino $70,000; Aubuchon paid Pendino an additional $30,000.
The Florida Bar filed a complaint against O'Malley and at the conclusion of the disciplinary proceeding the referee made the following recommendations as to guilt: 1) By removing the collateral from the safety deposit box and by failing to return it to Pendino, O'Malley violated Florida Bar Integration Rule, article XI, Rule 11.02(4), which provides that money or other property entrusted to a lawyer for a particular purpose is held in trust and must be used only for that purpose, and that refusal to deliver the property on demand is conversion. And, 2) by testifying falsely under oath that the collateral was in his possession and had not been given to another, O'Malley violated Florida Bar Integration Rule, article XI, Rule 11.02(3)(a), which prohibits a lawyer from committing any act contrary to honesty, justice, or good morals, and also violated Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(3), 1-102(A)(4), and 1-102(A)(6) which provide that a lawyer shall not engage in illegal conduct involving moral turpitude, shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, and shall not engage in conduct that adversely reflects on his fitness to practice law.
In his report, the referee noted:
I am convinced, however, that the Respondent did not act with bad intent or to directly benefit himself. Respondent turned the escrow cash and precious metals over to the surety company because he mistakenly believed it was part of some oral agreement between the parties and because he thought it may have been required by law, despite the clear language of the escrow contract. Respondent's testimony in deposition was an attempt by him to protect a client or former client. His answers were intended to be evasive or narrow, but they were in fact misleading and false. Respondent did not benefit financially from his actions, and his motives were not dishonest or selfish.
The referee recommended the following disciplinary action:
That Respondent be placed on two years probation under the supervision of a member of The Florida Bar, and that as conditions of probation, the Respondent:
1. be suspended from the practice of law for ninety (90) days,
2. successfully complete an ethics course taught at an ABA approved law school,
3. take and pass the ethics portion of The Florida Bar exam,
4. participate in and successfully complete an alcohol rehabilitation program such as Alcoholics Anonymous or Florida Lawyers Assistance, Inc., and
5. pay the costs of this disciplinary proceeding.
The Bar has petitioned this Court for review, claiming that the evidence presented below warrants disbarment. O'Malley has cross-petitioned, asserting that the evidence supports only a public reprimand with no requirement that he take the ethics examination or enroll in an alcoholic rehabilitation program.
We agree with the referee's recommendations as to guilt  O'Malley committed professional misconduct when he removed the collateral from the safety deposit box, when he refused to deliver it to *1162 Pendino after Kersten had been acquitted, and when he lied under oath. We disagree with the referee's recommendations as to disciplinary measures.
We draw the following conclusions contrary to the referee's report: First, O'Malley directly benefited from his wrongful acts. By turning the money over to Pioneer, he enhanced his opportunity for professional and business advancement with a wealthy and valued client. Second, the record does not support the conclusion that O'Malley turned the money over due to a mistaken belief that such action was called for by an oral agreement between the parties, or that such was necessary under the applicable law. If that had been the case, O'Malley simply could have told Pendino of these considerations and then withdrawn from the agreement. Instead, O'Malley knowingly deceived Pendino when he yielded to Aubuchon's demands for the money:
Q. Mr. O'Malley, did you, sir, regard your client's direction and demand to you regarding the immediate turn over to him of the fifty-seven thousand five hundred dollars as being in contravention of the expressed terms of the January 13, 1984 agreement? Do you understand my question?
A. I think so.
Q. All right. Can I have an answer?
A. If she would read it back again.
(Whereupon, the requested portion was read back by the court reporter.)
THE WITNESS: Yes.
When O'Malley delivered to Pendino at the end of January the copy of the escrow agreement that had been signed by Aubuchon, he failed to mention his own removal of the collateral, or the existence of a separate oral agreement or an applicable state statute.
Nor are we convinced that O'Malley's false statements at deposition were motivated primarily by a desire to protect a former client. O'Malley testified in the disciplinary hearing that:
I had been advised that I was the last link in the chain of criminal prosecution of Mr. Aubuchon [apparently for stealing the collateral]. I'm not a criminal attorney. I didn't know what my rights or duties were, but he was my client so I tried to  I tried to analyze everything to give the narrowest response to narrow questions to protect him.
Had this truly been the case, the normal response of any attorney  trained or untrained in criminal matters  to such inquiry would have been to claim privilege, rather than making flatly false statements under oath.
The referee in his report failed to place due emphasis on the fact that O'Malley deliberately and unequivocally lied under oath. His answers at deposition were directly contrary to the truth; he later admitted this. A lawyer may commit no greater professional wrong. Our system of justice depends for its existence on the truthfulness of its officers. When a lawyer testifies falsely under oath, he defeats the very purpose of legal inquiry. Such misconduct is grounds for disbarment. The Florida Bar v. Manspeaker, 428 So.2d 241 (Fla. 1983).
We agree with the referee's finding of mitigating circumstances, and but for his findings, this would be a case for disbarment:
There are mitigating circumstances regarding Respondent's conduct as well. There was mention at trial that Respondent was experiencing marital difficulties at the time, and had a serious alcohol problem. Although it was after litigation was brought against him, Respondent eventually paid nearly seventy thousand dollars as restitution. The delay in payment was apparently due to Respondent's concern over legal issues in the civil action. Further, at the time of his misconduct, Respondent had only been practicing law a few [two and one-half] years. Mr. [Joseph] Boyd testified at the hearing that Respondent has a good reputation for honesty. Additionally, the Respondent has shown remorse as well as recognition of the wrongfulness of his behavior.
The only evidence of any injury caused by Respondent's misconduct consisted of Sam Pendino's testimony about his anxiety *1163 over the inability to gain return of the collateral, and his fear that the client would hold Pendino responsible rather than Respondent. No evidence was presented of actual financial loss to anyone.
Based upon the foregoing, Terence O'Malley, Sr. is suspended from the practice of law for three years. The suspension shall be effective January 9, 1989, thereby giving him time to protect the interests of his clients. He shall take on no new business during this time. We adopt the remainder of the referee's recommendations as to disciplinary measures except for the imposition of probation. O'Malley is ordered to pay the costs of this proceeding. Judgment is entered against him for $1,641.19, for which sum let execution issue. He may be reinstated at the conclusion of the three-year period upon payment of costs and proof of rehabilitation.
It is so ordered.
OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
EHRLICH, C.J., concurs in part and dissents in part with an opinion.
EHRLICH, Chief Justice, concurring in part, dissenting in part.
Although I agree with the majority's conclusion as to Mr. O'Malley's guilt, I must dissent as to the penalty. The conduct in the case at bar unquestionably warrants disbarment.
First, Mr. O'Malley immediately breached the express terms of the written escrow agreement that he had signed. Mr. O'Malley's argument that there was not competent substantial evidence to support the finding that he breached the escrow agreement is unpersuasive. Mr. O'Malley contends that the signature of Mr. Aubuchon and the insurance carrier on the document was required by Mr. Aubuchon as a precondition of the execution of the document and that Mr. Aubuchon had not signed at the time he was entrusted with the property. He also contends that section 648.442, Florida Statutes (1985), required that the surety actually hold the funds. These factors are irrelevant. Regardless of Mr. O'Malley's subjective intent or beliefs, he knew that at the time he signed the agreement and was entrusted with the property that Mr. Pendino was relying upon him to abide by the express written terms of the agreement. Irrespective of the fact that Mr. Aubuchon had not signed the agreement, Mr. O'Malley did in fact sign and at that time assumed a duty not only to his original client but also to the other party to the escrow agreement. Although Mr. O'Malley is technically correct in his assertion that this is not a trust account violation, the effect is the same  he misused property entrusted to him for safekeeping.
Even more serious and disturbing is the fact, as found by the referee, that Mr. O'Malley testified falsely under oath regarding the situation he created. Our system for the administration of justice depends upon a witness's testifying truthfully in a judicial proceeding. To ensure the truth, we administer an oath to a prospective witness. In that oath the witness vows to tell the truth with a solemn appeal to God. The witness also subjects himself to perjury for violation of the oath, a serious criminal offense. Without some means whereby we can be assured that the witness's testimony is truthful there is no way that our system can properly function. The oath and a proper recognition of its significance are essential. Without it we have judicial chaos.
The lawyer, as an officer of the court, is charged with knowledge of the sanctity of the oath, and it is the lawyer, of all people in our contemporary society, who should lend his every effort to make certain that the integrity of the oath remains inviolate. In testifying falsely, Mr. O'Malley violated his oath in a proceeding during the course of litigation. Moreover, he violated the oath he took to become a member of The Florida Bar. "[O]ur profession can operate properly only if its individual members conform to the highest standard of integrity in all dealings within the legal system." The Florida Bar v. Lancaster, 448 So.2d 1019, 1024 (Fla. 1984) (Ehrlich, J., dissenting). *1164 Mr. O'Malley's conduct undermines the very foundation of our profession. I see no circumstance that will mitigate the enormity of his transgression to a case where a three-year suspension is adequate to operate as a deterrent to other members of the bar. The message should be loud and clear that a lawyer who lies under oath during the course of a judicial proceeding forfeits his standing to be a member of The Florida Bar.
As the referee noted in his recommendation, the duties violated in this case "are fundamental. There are perhaps no more important responsibilities of a lawyer than to preserve property entrusted to him or her and to testify honestly and forthrightly in litigation proceedings." I feel disbarment is the appropriate discipline.