702 So.2d 229 (1997)
THE FLORIDA BAR, Complainant,
v.
Robert A. BOLAND, Respondent.
No. 85274.
Supreme Court of Florida.
December 4, 1997.
Rehearing Denied January 16, 1998.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Thomas E. DeBerg, Branch Staff Counsel, Tampa, for Complainant.
Robert A. Boland, Tampa, Respondent, pro se.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by Robert A. Boland. We have jurisdiction. Art. V, § 15, Fla. Const.
The Florida Bar filed a two-count complaint against Boland, alleging numerous violations of the Rules Regulating The Florida Bar. Judge Brandt C. Downey III was appointed referee. The referee made the following findings of fact:

COUNT I
Boland was contacted in March 1993 by Albert Farinha on behalf of his daughter Kathleen Rains. Farinha informed Boland that a North Carolina court had ordered Rains to deliver her children to that state within twenty-four hours to allow her estranged husband to have visitation. Boland instructed Farinha to tell his daughter Rains to drive immediately to Florida and that he would handle the matter. When Boland spoke with Rains, he told her that twentyfour hours was unrealistic and that he would get the case transferred to Florida and represent Rains in a Florida action regarding visitation and seeking to set aside the order to return the children to North Carolina.
In April 1993, Rains paid Boland a $500 retainer fee. Boland cashed the check and did not deposit any of it into his trust account. Rains asked Boland to obtain a restraining order against her husband, who had assaulted her in the past, and to have the custody matter transferred to Florida. Rains gave Boland papers relevant to the custody matter and visitation such as the children's school and medical records. Rains relied on Boland's representations and did not take her children to North Carolina within the twenty-four hours ordered by the court. Consequently, an order for her arrest was issued by the District Court of North Carolina.
In May 1993, Boland met with Rains at the Hillsborough County Courthouse to file a *230 dissolution of marriage action and a motion for a restraining order. Boland knew that Rains did not satisfy the six-month residency requirement for the dissolution action but signed and filed the petition nevertheless.
In July 1993, Boland was served with a Motion to Change Custody of the Minor Children, filed by Rains' husband in North Carolina, and a notice of hearing. Boland advised Rains that she would have to hire a North Carolina attorney to handle the hearing and arranged for Sally Scherer, a North Carolina attorney, to appear on Rains' behalf and review the files in the action. Boland advised Rains that Scherer was charging $350 and received a check from Rains in that amount as payment for Scherer's services. Boland should have placed the money in escrow until the amount was transmitted to Scherer but instead cashed the check, converting the money to his own use. Scherer did not receive any of this money. A week later Scherer submitted a bill to Boland for $325 for services rendered, showing that the bill was unpaid. Boland requested another $350 from Rains for Scherer's fees. This check was annotated "NC lawyer and Robert Boland." Boland cashed the check and converted the funds to his own use. He was not authorized to apply any money from either of the checks to his own fees.
In September 1993, Rains' sister-in-law, Jennifer Farinha, was served with documents relating to the North Carolina custody proceedings and intended for Rains, who was not present at the place of service. Boland directed that these papers be brought to him and not be shown to Rains. He drafted an Affidavit in Opposition to Service of Process to be signed by Jennifer Farinha and filed by Rains in North Carolina as part of her claim of inadequate service of process. Jennifer Farinha told Albert Farinha that she did not want to sign the affidavit because it inaccurately stated that she was Rains' sister and did not know Rains' actual residential address. When Albert Farinha suggested that Boland change the two misrepresentations, Boland advised him to tell Jennifer Farinha to sign the affidavit as it was drafted, which she did. Boland submitted the affidavit to the court knowing of the misrepresentations.
Following a hearing in North Carolina in October 1993, Boland informed Mr. Farinha that Rains' husband had been awarded custody and that Rains was ordered to turn the children over to representatives of the sheriff's department. Boland advised Rains through her father, and later directly, to take the children out of the state on a "long vacation," and that he would "take care of the mess." Rains left Florida to avoid execution of the court order and did not return to the state until around Thanksgiving time.
The day after Rains had left the state, Farinha called Boland and told him that representatives of the sheriff's department were at his house looking for the children. When Farinha explained that he had lied and told the officers that Rains might be on her way with the children to North Carolina, Boland responded, "Good thinking." He also told Farinha to deny knowing their whereabouts and direct the sheriff's employees to Boland, who said that he would invoke the attorneyclient privilege.
When Rains returned to Florida, she discharged Boland and requested return of the documents she had given him. Boland did not respond and did not turn over the file until the referee directed him to do so in these proceedings.

COUNT II
Boland admitted the following allegations contained in count II of the Bar's complaint. He was convicted of driving under the influence, which resulted in revocation of his driver's license for six months in 1980. In 1983 his driver's license was revoked for five years following classification as an habitual traffic violator. He was found guilty of operating a motor vehicle without insurance in 1987. He was convicted of first-degree misdemeanor possession of marijuana in 1993. In 1994, Boland's driver's license was suspended for one year for driving with an unlawful blood alcohol level. His driver's license was indefinitely suspended on nine different occasions between 1987 and 1993 for failure to appear in court on traffic summonses. His driver's license was indefinitely suspended thirteen other times between 1987 and 1994 for failure to pay traffic fines.

*231 RECOMMENDATION AS TO GUILT

With respect to count I, the referee found violations of the following Rules Regulating The Florida Bar: 4-1.1 for failing to provide competent representation to a client; 4-1.2(d) for counseling a client to engage in conduct the attorney knows is criminal or fraudulent; 4-1.3 for failing to act with reasonable diligence and promptness in representing a client; 4-1.4(a) for failing to keep a client reasonably informed about the status of a matter; 4-1.4(b) for failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; 4-1.15(a) for failing to hold in trust funds and property of clients received in connection with a representation; 4-1.16(d) for failing to protect a client's interests; 4-3.4(b) for fabricating evidence/counseling or assisting a witness to testify falsely; 4-3.4(c) for knowingly disobeying an obligation under the rules of a tribunal; 4-8.4(a) for violating or attempting to violate the Rules of Professional Conduct; 4-8.4(b) for committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects; 4-8.4(c) for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; 4-8.4(d) for engaging in conduct prejudicial to the administration of justice; and 5-1.1(a) for conversion. In count II, the referee found Boland guilty of violating rule 3-4.3 for unlawful conduct; 4-3.4(c); 4-8.4(b); 4-8.4(c); and 4-8.4(d).

RECOMMENDATION AS TO DISCIPLINE
The referee recommended that Boland be suspended from the practice of law for two years followed by two years' probation, during which time the Bar will supervise Boland's legal practice and trust account practices. The referee further recommended that Boland be required to successfully pass the ethics portion of the Florida Bar examination, successfully complete an alcohol rehabilitation program, and pay $1,200.00 in restitution to Kathleen Rains (now Farinha). The referee assessed all costs against Boland, which amounted to $4,220.74 according to the Bar Counsel's affidavit.
In aggravation, the referee found: prior disciplinary record (for conflict of interest and handling a legal matter he was not competent to handle, resulting in public reprimand, two-years' probation, and continuing education course requirement); dishonest or selfish motives; multiple offenses; refusal to acknowledge wrongful nature of conduct; vulnerability of victim; substantial experience in practice of law; indifference to making restitution; and refusal to obtain treatment for alcoholism. In mitigation, the referee noted that Boland had admitted the charges in count II and that he has physical or mental disability or impairment.
Boland first contends that the referee's findings of fact are not supported by clear and convincing evidence.[1] A referee's findings of fact carry a presumption of correctness that should be upheld unless clearly erroneous or without support in the record. Florida Bar v. Vannier, 498 So.2d 896, 898 (Fla.1986). A review of the record in this case reveals that the referee's findings of fact are supported by competent substantial evidence. This evidence included the testimony of Kathleen Rains, Albert Farinha, and Sally Scherer, the North Carolina attorney Boland retained on behalf of Kathleen Rains. Although Rains and Albert Farinha had a motive to distort the facts in their favor (Kathleen Rains would likely benefit from a finding that Boland was responsible for mishandling her case in any future attempt to have the custody order set aside), Sally Scherer did not. Also, Boland's own reason for distorting the facts in his favor is self-evident. The referee was in a better position to judge the respective credibility of the witnesses. Moreover, documentary evidence presented by the Bar was consistent with Kathleen Rains' and Albert Farinha's testimony. This included the bill Sally Scherer sent Boland, the checks that Kathleen Rains gave to Boland, and a transcript of a recorded conversation *232 between Albert Farinha and Boland. While our scope of review is broader for legal conclusions than it is for factual findings, Florida Bar v. Joy, 679 So.2d 1165, 1167 (Fla.1996); Florida Bar re Inglis, 471 So.2d 38 (Fla.1985), we conclude that the referee's findings of fact support his conclusions as to guilt.
Boland also argues that in determining what discipline to recommend, the referee improperly assumed the existence of aggravating factors and failed to consider in mitigation the referee's year-long delay in issuing his report. As to the contested aggravation, the record supports the referee's findings as to each factor. On the other hand, Boland has not satisfied Florida Standard for Imposing Lawyer Sanctions 9.32(i), which requires a lawyer to demonstrate that specific prejudice resulted from an unreasonable delay in the disciplinary proceeding. As the Bar points out in its brief, Boland could have used that time to begin rehabilitation or make restitution or otherwise rectify the consequences of his misconduct.
Given Boland's multiple offenses in both counts of this case, his prior discipline, selfish or dishonest motive, indifference to making restitution, refusal in the past to obtain treatment for his admitted alcoholism, and the vulnerability of the victim, we might be inclined to consider a harsher discipline. While not solely responsible for Kathleen Rains' actions that led to her loss of custody, he contributed to them. Upon becoming her lawyer, Boland was charged with representing his client competently, which would include informing his client of the legal consequences of her behavior, notifying her of the various proceedings in the case, and giving her competent legal advice. Rains' own ignorance of the law cannot excuse Boland's. However, in light of the disability or impairment considered in mitigation, which is well demonstrated by the findings in Count II, we approve the referee's recommended two-year suspension and other sanctions. Florida Stds. Imposing Law. Sancs. 4.42, 4.52, 5.12, 6.11.
We approve the recommendation of discipline. Robert A. Boland is hereby suspended from the practice of law for two years followed by two years' probation, during which time the Bar is to supervise Boland's legal practice and trust account practices. Boland will also be required to successfully pass the ethics portion of the Florida Bar examination, successfully complete an alcohol rehabilitation program, and pay $1,200.00 in restitution to Kathleen Rains (now Farinha). The suspension will be effective thirty days from the filing of this opinion so that Boland can close out his practice and protect the interests of existing clients. If Boland notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Boland shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment for costs in the amount of $4,220.74 is entered against Robert A. Boland, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] Initially, Boland argues that the referee applied the wrong standard of proof in determining guilt. Although the referee stated at the sanctions hearing that the Bar had proven its case by "more than a preponderance of the evidence," his written report makes clear that he applied the clear and convincing evidence standard. Florida Bar v. Quick, 279 So.2d 4 (Fla. 1973).