707 So.2d 670 (1998)
THE FLORIDA BAR, Complainant,
v.
Edward C. VINING, Jr., Respondent.
No. 84641.
Supreme Court of Florida.
February 12, 1998.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee; and Randi Klayman Lazarus, Bar Counsel, Miami, for Complainant.
Rhea P. Grossman of Rhea P. Grossman, P.A., Miami; and Louis M. Jepeway of Jepeway and Jepeway, P.A., Miami, for Respondent.
PER CURIAM.
We have for review the complaint of The Florida Bar and the referee's report regarding alleged ethical breaches by respondent *671 Edward C. Vining, Jr. We have jurisdiction. Art. V, § 15, Fla. Const.
Following a disciplinary hearing before the referee, Judge Victoria S. Sigler, respondent was found guilty of violating Rules of Professional Conduct 4-8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation) and 4-8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice) of the Rules Regulating The Florida Bar. The referee found that respondent's general conduct had been "dishonest, fraudulent, and deceitful." The referee considered several aggravating[1] and mitigating[2] factors before recommending a suspension for three years and thereafter until rehabilitation is shown under rule 3-5.1(e), Rules Regulating The Florida Bar, and also recommended that respondent be assessed costs of $6,872.69.[3]

FACTS[4]
Respondent represented Eva Martyn in her divorce and her appeal in which she contested the trial judge's denial of alimony and attorney's fees. The appellate court reversed and a hearing on reasonable attorney's fees was subsequently held. In the course of the hearing, respondent failed to inform the court he had been compensated by Martyn for the original proceeding.[5] The trial court entered an award for alimony and attorneys fees and the monies were deposited in Florida National Bank (FNB) as a supersedeas bond.[6] As a result of a stipulation between the parties concerning attorney's fees and costs, a check payable to respondent and Martyn was disbursed. However, Martyn refused respondent's demand that she endorse the check over to him because she felt respondent had already been paid for his services. On February 24, 1984, respondent filed a motion for release of funds on behalf of both respondent and Martyn, asking for reissuance of the check in his name only. Respondent filed and proceeded with the motion without providing notice to Martyn and with knowledge that she disputed the claim.[7] The request was ultimately denied.
Martyn discharged respondent in February or March, 1984. Richard L. Katz took over as new counsel. In June 1984, the Circuit Court in Martin County entered an order substituting Katz as counsel and prohibiting disbursement of the disputed funds until the proceedings between respondent and Martyn were concluded.[8]
*672 During this period, Martyn's ex-husband died. The estate and Katz agreed to place the disputed funds in the court registry. Respondent then filed an action against FNB in order to recover the funds in the registry. Respondent did not inform FNB's attorney, H. James Catlin, that he no longer represented Martyn and that Martyn claimed an adverse interest in the funds. A stipulation for payment was reached, respondent presented the stipulation and proposed order to the court, and the court ordered the funds disbursed to respondent. Martyn, upon learning of the release, filed suit against respondent and, in September, 1993, was awarded damages for conversion and civil theft.[9]

REFEREE'S FINDINGS OF FACT
The referee is responsible for findings of fact and resolving conflicts in the evidence. Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994). The referee's findings of fact enjoy a presumption of correctness and "should not be overturned unless clearly erroneous or lacking in evidentiary support." Id. Respondent claims that the referee's findings are not supported by competent and substantial evidence; that Martyn and Katz's testimony should have been excluded because of their bias and animosity toward him; and that the referee did not make independent findings of fact. His arguments are meritless.
First, the testimony of Martyn and Katz did not comprise the sole evidence supporting the referee's findings. Second, while respondent maintains that the testimony of Martyn and Katz "clearly indicates their bias and animosity," he overlooks the role of the fact finder in determining credibility and the weight to be given particular evidence, as well as failing to substantiate his allegations of bias with citations to record evidence. He further argues that the referee did not make independent findings of fact, referring to the introduction of the circuit court judgment into evidence and the referee's inclusion of Judge Kenney's language in her report.[10]
In Florida Bar v. Calvo, 630 So.2d 548 (Fla.1993), we approved the referee's admission and consideration of rulings of the Securities and Exchange Commission (SEC) and federal cases which arose from the conduct underlying the disciplinary action. Id. at 550. Though we acknowledged that SEC disciplinary proceedings and bar disciplinary *673 proceedings apply differing standards of review, that fact only affects the weight accorded the evidence, not its admissibility. Id.
Likewise, in Florida Bar v. Rood, 620 So.2d 1252 (Fla.1993), Rood, like respondent does here, argued that the referee's findings of fact were clearly erroneous and not supported by clear and convincing record evidence because the referee should not have considered a trial transcript from prior litigation involving the same set of facts and circumstances which gave rise to Rood's disciplinary proceeding. Id. at 1255. The referee considered the findings of fact made by the trial judge in the previous litigation and found those facts to have been proven by clear and convincing evidence. Id. We approved that finding, reasoning that a referee is not bound by the technical rules of evidence and is authorized to consider any relevant evidence, including the "trial transcript or judgment from the civil proceeding." Id.
Consequently, under Calvo and Rood, the referee's consideration of the prior litigation between respondent and Martyn was permissible. See Florida Bar v. Clement, 662 So.2d 690, 697 n. 3 (Fla.1995) (reaffirming Rood in concluding "a referee in a bar-discipline case can consider any evidence he or she deems relevant to resolving a factual question") (citation omitted).[11] The referee was present for the testimony and able to observe the witnesses' demeanor and assess their credibility. Florida Bar v. Boland, 702 So.2d 229, 231-32 (Fla.1997). Furthermore, each finding of fact in the referee's report is corroborated by a citation to testimony offered during the disciplinary hearing, thus rebutting respondent's argument that the referee merely adopted another's findings of facts. Accordingly, we approve the referee's findings of fact.

DISCIPLINE
In contrast to the referee's findings of fact, we have a broader scope of review regarding the actual discipline imposed because we have the ultimate responsibility to order a sanction. Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla.1994). Yet, we "will not second-guess a referee's recommended discipline so long as that discipline has a reasonable basis in existing caselaw." Florida Bar v. Corbin, 701 So.2d 334, 335-37 (Fla.1997) (quoting Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997)). Therefore, the referee's disciplinary recommendation is presumptively correct and will be followed unless clearly off the mark. Niles, 644 So.2d at 507.
In this case, the referee recommended a three-year suspension. In aggravation, the referee found that respondent had violated his duty to his client in his effort to collect fees and caused the client actual financial injury, and his "dishonest, fraudulent, and deceitful conduct" before Judge Cianca. Report of Referee at 6. However, in mitigation, the referee considered respondent's lack of prior disciplinary convictions and his serious health problems. The referee also found that respondent had an "indicia of entitlement" to the disputed attorney's fees, and had satisfied a civil judgment against himself based on the same underlying facts.
In Florida Bar v. Kleinfeld, 648 So.2d 698, 700 (Fla.1994), Kleinfeld had failed to appear before the trial judge in response to two show cause orders for direct criminal contempt, and then filed a motion to disqualify the judge from the underlying case, as well as seeking his recusal from her contempt proceedings. In support of her motion, Kleinfeld filed a sworn affidavit accusing the judge of attempting to intimidate her lawyer in the contempt proceedings, Richard Rosenbaum. However, in testimony at the disciplinary hearing, both the judge and attorney Rosenbaum unequivocally denied that any such incident ever took place. We imposed the recommended three-year suspension, remarking that "[w]e can conceive of no ethical violation more damaging to the legal profession and process than lying under oath, for perjury strikes at the very heart of our entire system of justicethe search for the truth. An officer of the court who knowingly and deliberately seeks to corrupt the legal process can logically expect to be excluded *674 from that process." Id. at 701 (quoting Florida Bar v. Rightmyer, 616 So.2d 953, 955 (Fla.1993)).
Similarly, in Florida Bar v. O'Malley, 534 So.2d 1159 (Fla.1988), the respondent attorney testified falsely under oath during a deposition in a civil case. While we found this affirmative misconduct grounds for disbarment, we imposed a three-year suspension due to significant mitigation. Id. at 1162-63.
In this case, the referee found respondent guilty of multiple offenses of serious misconduct. Report of Referee at 6-7. That fact alone exposes respondent to harsher discipline than may be ordinarily warranted. See Fla. Stds. Imposing Law. Sancs. 9.22(d) (multiple offenses are one factor that may justify an increase in degree of discipline imposed). On the other hand, while the referee found respondent guilty of misconduct, she also stated that an "indicia of entitlement" to the monies was evinced by inclusion of respondent's name on the check. Report of Referee at 7. The referee believed that respondent acted because he felt he had a legitimate claim to the disputed funds. Id. The referee's report may reasonably be read as finding respondent engaged in unethical conduct but also as acknowledging that respondent had some basis for his belief that he was entitled to the disputed funds. See id. As the referee noted, "[i]t is not so much the fact that he sought the monies, as the way he went about it." Id. While we agree with the referee's conclusion, that factor must be juxtaposed with respondent's multiple offenses, especially his dishonest, fraudulent misrepresentation before Judge Cianca. Considering all of the circumstances, we conclude under the reasoning set out in Kleinfeld and O'Malley that a three-year suspension is warranted.
Accordingly, Edward C. Vining, Jr. is hereby suspended from the practice of law for three years. The suspension will be effective thirty days from the filing of this opinion so that respondent can close out his practice and protect the interests of existing clients. If Vining notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Vining shall accept no new business from the date this opinion is filed until the suspension is completed. Judgment is entered against Edward C. Vining, Jr. in the amount of $6,872.69, for which sum let execution issue.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The referee found that respondent had violated his duty to his client in his effort to collect fees and, consequently, the client suffered actual financial injury from the fee dispute. Impliedly, the referee also considered respondent's extensive experience as an attorney, having been admitted to the Bar in 1959. See Fla. Stds. Imposing Law. Sancs. 9.22(I).
[2] In mitigation, the referee considered that the disputed check was made out jointly to respondent and Martyn, thus creating an "indicia of entitlement" to the monies. Additionally, respondent already had a judgment entered against him in favor of Martyn and satisfied that judgment. The referee also considered that respondent had health problems and no prior disciplinary convictions.
[3] Respondent apparently received a private reprimand in 1980 for an ex parte communication with a judge on the merits of a case and submitted a proposed order. Complainant's Initial Brief at 6; Respondent's Answer Brief at 15. Presumably, the referee concluded that the private reprimand did not constitute an aggravating factor under standard 9.22(a) due to the passage of more than seven years in the interim.
[4] The following facts are from the referee's report.
[5] Respondent and Martyn had an oral contingency agreement which entitled respondent to one third of the judgment plus costs.
[6] Martyn's ex-husband deposited the monies as a supersedeas while his appeal was pending.
[7] Martyn was represented by new counsel and present when this issue came before the court. The hearing was held while litigation between respondent and Martyn was pending.
[8] The trial court was referring to the suit brought by respondent in Dade County seeking $75,000.99 in addition to the attorney's fees previously paid by Martyn. An award of $8,000.00 was entered for respondent and Martyn satisfied the judgment after an unsuccessful appeal. In return, respondent executed a release of lien encompassing the disputed monies, including the check. However, at a later date, respondent refused to sign a release of satisfaction of the Martin County judgment, which represented the same monies for which he had previously executed a release of lien.
[9] Martyn was awarded $60,700 in compensatory damages and $60,000 in punitive. In his order, Judge Kenney wrote:

[Respondent] committed extrinsic fraud on the Court when he submitted to the Court a stipulation for payment dated March 28, 1988, together with a proposed order on stipulation, which order was entered by Martin Circuit Court Judge Mark A. Cianca, on March 30, 1988. The submission was done with the purpose of deceiving the court and to fraudulently conceal material facts from the court, including without limitation, that Defendant Vining had previously executed a release of any interest he had in the very same funds which the March 30, 1988 order allowed to be disbursed to Defendant Vining and Plaintiff Martyn had an interest in the subject funds and was then represented by another attorney who had previously vigorously opposed disbursement of said funds to Defendant Vining. Moreover, Defendant Vining intentionally failed to give proper notice to either Mrs. Martyn or her counsel of his application to the court to have the funds disbursed to him, as was required, so that Defendant Vining could conceal his receipt of the monies, perpetrated by and through his fraud on the court. By virtue of Defendant Vining's wrongful conduct, Plaintiff Martyn was improperly precluded from asserting her opposition to the disbursement of her funds to Defendant Vining. By failing to inform either Plaintiff Martyn and her counsel of Defendant Vining's efforts to remove the subject funds from this court's registry for the Defendant's sole benefit, Defendant Vining deliberately precluded Plaintiff Martyn from participating in the judicial process and wrongfully precluded her from objecting to the release of funds to Vining as she had consistently done in the past.
Martyn v. Vining, No. 90-190CA, Final Judgment (Fla. 19th Circ. Ct. Jan. 4, 1994).
[10] Before the referee, respondent argued that on the basis of Stogniew v. McQueen, 656 So.2d 917 (Fla.1995), collateral estoppel prohibited the introduction of the circuit court judgment into evidence. Stogniew bars a party from using a previous judgment unless both parties are bound by that judgment and the issue in the current litigation is identical to the issue in the prior litigation. Id. at 918. Respondent's reliance on Stogniew is misplaced. The Bar did not seek to use the judgment for purposes of collateral estoppel. Respondent was not precluded from denying the allegations and presenting evidence refuting them.
[11] Moreover, Rood places the burden on the respondent to demonstrate that the findings of fact are unjustified. 620 So.2d at 1255. Respondent has failed to carry that burden.