786 So.2d 516 (2001)
THE FLORIDA BAR, Complainant,
v.
Iric Vonn SPEARS, Respondent.
Nos. SC94769, SC96180.
Supreme Court of Florida.
April 12, 2001.
John F. Harkness, Jr., Executive Director, and John Anthony Boggs, Division Director, Tallahassee, FL; and Thomas Edward DeBerg, Assistant Staff Counsel, Tampa, FL, for Complainant.
Scott K. Tozian of Smith and Tozian, P.A., Tampa, FL, for Respondent.
PER CURIAM.
We have for review a referee's report recommending that presently suspended attorney Iric Vonn Spears receive no further discipline for additional misconduct. We have jurisdiction. See art. V, § 15, Fla. Const. For the reasons expressed below, we disapprove the referee's recommendation and disbar Spears.

*517 FACTS
Spears is presently under a three-year suspension for various acts of misconduct. The facts underlying this suspension are as follows. Following an audit of Spears' trust account, the Bar charged Spears with violating nineteen Rules Regulating the Florida Bar relating to his misuse and commingling of client funds and his failure to properly manage his trust account. Prior to a hearing before the assigned referee, Spears entered a Conditional Guilty Plea for Consent Judgment (hereinafter, "consent judgment"),[1] whereby Spears pled guilty to the rule violations alleged by the Bar[2] and agreed to a three-year suspension from the practice of law, to be followed by a three-year probationary period if he were reinstated. The consent judgment signed by Spears indicated that restitution had been made to all clients whose funds had been compromised, with the exception of one of the clients whom Spears was given one year to pay. The appointed referee recommended approval of the consent judgment, and this Court approved the referee's report. See Florida Bar v. Spears, 709 So.2d 538 (Fla.1998) (table).
In January 1999, a little less than a year after approval of the consent judgment, the Bar filed two additional complaints against Spears, which culminated in the referee's report now before us. The two complaints were consolidated, and the same referee who handled the consent judgment was appointed to hear these additional complaints. In Florida Bar v. Spears, No. SC94769 (hereinafter "restitution matter"), the Bar charged Spears with intentionally misrepresenting in the consent judgment that he had made restitution to one of his clients, when in fact the client was not paid until after the consent judgment was executed.[3] Following a hearing, the referee found that although Spears' representation in the consent judgment *518 that restitution had been paid was incorrect, the representation was not made in an effort to intentionally mislead the Bar. Although not explicitly stated in the referee's report, we must conclude that the referee intended to recommend that Spears be found not guilty of the rule violations charged in the restitution matter.
In Florida Bar v. Spears, No. SC96180 (hereinafter "Carey matter"), the Bar charged Spears with engaging in criminal and dishonest conduct involving his representation of client Carey in a personal injury matter. Although the conduct at issue in the Bar's complaint took place prior to the consent judgment, the Bar alleged that it was unaware of the facts underlying the Carey matter when it filed the complaint which gave rise to the consent judgment. Following a hearing, the referee found that Spears settled Carey's personal injury case and received a check for $15,000. Spears deposited the settlement check into his general account, then terminated his representation of Carey by letter one month later without informing Carey of the settlement. Based on these facts, the referee recommended that Spears be found guilty of violating rules 4-1.15(a) (clients' and third party funds to be held in trust); 4-1.15(b) (prompt notification and delivery of client funds); 4-8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation); but not guilty of the violating rule 4-8.4(b) (lawyer shall not commit criminal act that reflects adversely on lawyer's honesty, trustworthiness, or fitness) and rule 3-4.4 (criminal misconduct).
As to discipline, the referee recommended that no additional discipline be imposed beyond the already imposed three-year suspension. The referee observed that the Carey matter took place prior to the signing of the consent judgment, and that had the Bar known about the Carey matter prior to signing the consent judgment, it would have been included in the initial complaint, and he, as the referee who recommended approval of the consent judgment, would still have recommended a three-year suspension. The Bar now petitions for review, seeking disbarment.[4]

ANALYSIS
The referee's disciplinary recommendation for the rule violations found in the Carey matter would impose no additional sanction for Spears' misconduct in the Carey matter. Although a referee's disciplinary recommendation is persuasive, and we will not "second-guess a referee's recommended discipline as long as that discipline has a reasonable basis in existing case law," Florida Bar v. Lecznar, 690 So.2d 1284, 1288 (Fla.1997), we do not pay the same deference to a referee's disciplinary recommendation as we do to the guilt recommendation because we have "the ultimate responsibility to determine the appropriate sanction." Florida Bar v. Sweeney, 730 So.2d 1269, 1272 (Fla.1998).
Although the referee did not rely on any specific cases in making his disciplinary recommendation, Spears argues that the referee's recommended discipline has a reasonable basis in existing case law because the discipline imposed in the consent judgment was at the high end of the disciplinary *519 scale for the conduct at issue in that case, and therefore even with the addition of the misconduct in the Carey matter, harsher discipline is unwarranted. In support of this argument, Spears likens the conduct at issue in the consent judgment to conduct for which we imposed a one-year suspension in Florida Bar v. Krasnove, 697 So.2d 1208 (Fla.1997) (attorney misappropriated funds earmarked for payment of client's medical providers), and two-year suspensions in Florida Bar v. Boland, 702 So.2d 229 (Fla.1997) (attorney misappropriated funds intended for payment of out-of-state lawyer), and Florida Bar v. Corces, 639 So.2d 604 (Fla.1994) (attorney misappropriated trust funds to pay personal bills). We disagree with this assessment of our case law regarding the misuse of client funds.
Krasnove, Boland, and Corces do not stand for the proposition that a three-year suspension from the practice of law is an exceptionally harsh discipline for the misuse of client funds. On the contrary, for decades this Court has routinely stated that the presumptive penalty for the misuse of client funds is disbarment. See Florida Bar v. Travis, 765 So.2d 689, 691 (Fla.2000) ("The overwhelming majority of cases involving the misuse of client funds have resulted in disbarment regardless of the mitigation present."); Florida Bar v. Porter, 684 So.2d 810, 813 (Fla.1996) ("Misuse of client funds is unquestionably one of the most serious offenses a lawyer can commit. Disbarment is the appropriate sanction for this offense alone."); Florida Bar v. Tunsil, 503 So.2d 1230, 1231 (Fla.1986) ("In the hierarchy of offenses for which lawyers may be disciplined, stealing from a client must be among those at the very top of the list."); Florida Bar v. Breed, 378 So.2d 783, 784 (Fla.1979) ("The willful misappropriation of client funds should be the Bar's equivalent of a capital offense."); Florida Bar v. Burton, 218 So.2d 748, 749 (Fla.1969) ("The judgment of disbarment is certainly justified when an attorney misappropriates funds which he receives by virtue of his fiduciary relationship with his client."); State ex rel. Florida Bar v. Jarvis, 74 So.2d 228 (Fla. 1954) (embezzlement of client funds is unprofessional conduct which justifies disbarment). That lesser discipline was deemed appropriate in Krasnove, Boland, and Corces does not alter this fundamental precept of attorney discipline in Florida.
Further, a review of the misconduct admitted to by Spears in the consent judgment indicates that reliance on Krasnove, Boland, and Corces is misplaced. In the consent judgment, Spears admitted to closing down his trust account in November 1995, and placing the $10,475.84 balance in his personal account. Spears subsequently depleted these funds, which were held for clients Robles, Hill and Tellis. The Robles funds consisted of $3,109.44 that Spears had withheld from a settlement on Robles' behalf for the purpose of paying Robles' doctor, who was not paid until a year later. As to client Hill, Spears negotiated a $20,000 settlement on her behalf, but then told her the gross recovery was only $12,648.73. Under the reduced figure, Hill was to receive $7,392.85, but Spears paid her only $6800 and misappropriated the remaining funds. Spears also negotiated a settlement for client Tellis, and withheld $1,354.16 for the purported purpose of paying medical bills. Instead, these funds were part of the funds Spears transferred from his trust account to his personal account and then depleted. These admitted facts make clear that unlike the isolated incidents of misappropriation at issue in Krasnove, Boland, and Corces, Spears was involved in multiple, cumulative incidents of misappropriation and, in addition, failed to follow even the most basic rules regarding trust account *520 record-keeping. We therefore reject Spears' assertion that the discipline imposed by the consent judgment was already at the high end of the disciplinary scale, and conclude that Krasnove, Boland, and Corces do not provide a reasonable basis in existing case law to support the referee's recommendation that no additional discipline is warranted for Spears' conduct with regard to the Carey matter.
Having determined that the referee's recommended discipline is not supported by existing case law, we now turn to the appropriate discipline for the conduct at issue in the Carey matter. Spears settled his client Carey's personal injury suit, placed the $15,000 settlement check into his own personal account, and then informed Carey by letter that he could no longer represent him. Spears attempted to excuse the misappropriation by arguing before the referee that the funds were being held to satisfy outstanding medical bills which Spears was attempting to negotiate. The referee found this explanation incredible, and "totally undermined by the [letter from Spears to Carey] terminating their relationship." From our perspective, there cannot be a clearer example of the deceptive and intentional misappropriation of client funds than the conduct at issue in this case.
We are also particularly disturbed that Spears was under investigation by the Bar for the misconduct which culminated in the consent judgment at the time he settled Carey's claim and misappropriated the $15,000 settlement. Although Spears had not yet entered into the consent judgment and was not under suspension or probation, he was on notice that he was under investigation for similar misconduct.[5] As with situations where attorneys are on probation or suspended from the practice of law, this was a time when Spears "should have been conducting himself in the most upstanding manner." Florida Bar v. Orta, 689 So.2d 270, 273 (Fla.1997) ("[W]e are unable to overcome the fact that Orta's current multiple violations all took place while he was under suspension for past similar misconduct involving dishonesty ...."); see also Florida Bar v. Temmer, 753 So.2d 555, 560 (Fla.1999) ("That Temmer committed her present misconduct while on probation (as opposed to while under suspension) is not determinative-she still `should have been conducting herself in the most upstanding manner.'") (quoting Orta, 689 So.2d at 273). Although the referee determined that had the Bar known about the Carey matter it would have been included in the consent judgment case, the fact remains that the Carey matter was undetected at the time Spears entered into the consent judgment. We can only conclude that Spears was in the best position to have brought the Carey matter to the Bar's attention, and that the exclusion of the Carey matter from the consent judgment case is solely attributable to Spears' failure to conduct himself in a most upstanding manner at a time when he was under investigation for multiple and serious violations of the Rules of Professional Conduct.
Our single most important concern in the attorney discipline process "is the protection of the public from incompetent, unethical, or irresponsible representation." Florida Bar v. Moses, 380 So.2d 412, 417 (Fla.1980). This protection is paramount considering that the very nature of *521 the lawyer-client relationship requires that clients "place their lives, their money, and their causes in the hands of their lawyers with a degree of blind trust that is paralleled in very few other economic relationships." Florida Bar v. Dancu, 490 So.2d 40, 41-42 (Fla.1986). Spears had already violated this trust by committing the misconduct detailed in the consent judgment, and we view the Carey matter to be an additional, egregious example of cumulative misconduct for which greater discipline must be imposed. In this instance, we deem disbarment to be the only appropriate penalty. See Florida Bar v. Vining, 761 So.2d 1044, 1048 (Fla.2000) ("[C]umulative misconduct of a similar nature warrants an even more severe discipline than might dissimilar conduct.").

CONCLUSION
Iric Vonn Spears is hereby disbarred effective, nunc pro tunc, April 5, 1998.[6] If Spears is ever readmitted to the Bar in the future under the provisions in rule 3-7.10 of the Rules Regulating the Florida Bar, he is to be under probation for a period of three years with the same conditions detailed in the consent judgment. Judgment for costs in the amount of $1,446.72 is entered against Spears, in favor of The Florida Bar, 650 Apalachee Parkway, Tallahassee, FL 32399, for which sum let execution issue.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, PARIENTE, LEWIS and QUINCE, JJ., concur.
NOTES
[1] Rule 3-7.9 of the Rules Regulating the Florida Bar permits an attorney to plead guilty after a formal complaint has been filed. Bar counsel then makes a recommendation as to discipline, subject to final approval by this Court.
[2] Specifically, Spears pled guilty to violating the following Rules Regulating the Florida Bar: rule 3-4.3 (commission by lawyer of act contrary to honesty or justice) (two instances); rule 3-4.4 (commission by lawyer of criminal misconduct) (two instances); rule 4-1.15 (client's funds to be held in trust) (two instances); rule 4-1.15(f)(5) (in the event of a recovery, lawyer shall prepare a closing statement and provide same to client); rule 4-1.15(d) (lawyer shall comply with the Rules Regulating Trust Accounts); 4-8.4(a) (lawyer shall not violate Rules of Professional Conduct) (two instances); rule 4-8.4(b) (lawyer shall not commit criminal act which reflects adversely on lawyer's honesty, trustworthiness or fitness) (two instances); rule 5-1.1 (funds entrusted for specific purpose are to be held in trust and used only for that purpose) (two instances); rule 5-1.1(c) (lawyer shall preserve records pertaining to client funds for six years subsequent to conclusion of client's cause); rule 5-1.2(b)(5) (lawyer shall maintain a cash receipts and disbursements journal of trust account funds); rule 5-1.2(b)(6) (lawyer shall maintain a separate file or ledger for each client or matter); rule 5-1.2(c)(1)(A) (lawyer shall prepare monthly reconciliations of all trust accounts); rule 5-1.2(c)(1)(B) (lawyer shall prepare a comparison between the total of all reconciled balances of trust accounts and ledger cards); and rule 5-1.2(c)(2) (lawyer shall prepare a detailed listing identifying the balance of unexpended trust money held for each client at least annually).
[3] Spears was charged with violating rule 4-1.15(b) (lawyer shall promptly notify client or third person upon receipt of funds in which client or third person has an interest); rule 4-8.1(a) (lawyer shall not knowingly make false statement of material fact in connection with disciplinary matter); rule 4-8.1(b) (lawyer shall not fail to disclose fact necessary to correct a misapprehension in connection with a disciplinary matter); and rule 4-8.4(c) (lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation).
[4] The Bar also challenges the referee's finding that Spears did not intentionally mislead the Bar in the consent judgment by failing to make restitution and the referee's finding of the mitigating factor of good faith and timely restitution as to client Carey. In light of our disposition as to discipline, we decline to address those issues and approve the referee's factual findings and recommendations as to guilt without further discussion.
[5] Although the complaint in the consent judgment case was not filed until December 24, 1997, several months after Spears' misappropriation of the Carey funds in mid-September 1997, the record reveals that just days before misappropriating the Carey funds, Spears was providing the Bar with letters and checks indicating that he had made restitution in the consent judgment case. Spears clearly was on notice that his conduct was being scrutinized at the time he misappropriated his client Carey's funds.
[6] Because Spears' suspension in the consent judgment case became effective April 5, 1998 (30 days after the date of our order), and Spears was ordered to close out his practice and not accept any new clients at that time, the effective date of this disbarment will be April 5, 1998 as well.