711 So.2d 518 (1998)
THE FLORIDA BAR, Complainant,
v.
Kenneth T. LANGE, Respondent.
Nos. 87537, 88694.
Supreme Court of Florida.
May 14, 1998.
Rehearing Denied June 11, 1998.
*519 John F. Harkness, Jr., Executive Director, and John T. Berry, Staff Counsel, Tallahassee, and Arlene K. Sankel, Bar Counsel, Miami, for Complainant.
Kenneth T. Lange, Miami, Respondent, pro se.
PER CURIAM.
We have for review the complaints of The Florida Bar and the referees' reports regarding alleged ethical breaches by respondent Kenneth T. Lange. We have jurisdiction. Art. V, § 15, Fla. Const. We consolidate these two cases for disposition in one opinion.

CASE NO. 88,694
The Florida Bar filed a one-count complaint against respondent in August 1996, alleging violation of the attorney-client privilege in that respondent disclosed confidential communications of a former client without seeking a waiver from that client. The referee's report reveals the following facts and determinations as to guilt.
In 1994, respondent represented Keith Biggins in a federal criminal case. Respondent had previously represented Carlos Vasquez who was listed as a government witness against Biggins. Prior to the commencement of trial, in two separate motions, respondent divulged confidential communications made to him by Vasquez in 1991 relating to uncharged crimes that Vasquez had confessed to committing.
On the opening day of trial, respondent filed a "Motion to Notice Actual Potential Conflict of Interest" between himself and Vasquez in which he again disclosed Vasquez's communications and confession to the crime. A hearing was held before Judge Stafford, during which respondent gave sworn testimony divulging the confidential communications made to him by Vasquez. Upon inquiry by Judge Stafford, respondent admitted that he had not obtained a waiver of the attorney-client privilege from Vasquez. Although respondent contends that his disclosure of confidential information falls within the crime-fraud exception to the attorney-client privilege, the referee found that no such argument was made to the judge in the federal court proceedings.[1]
Based on these facts, the referee found that respondent should not have divulged privileged attorney-client communications, but rather should have advised the court, in generalities, of this potential conflict and sought guidance from the court on how to proceed. Accordingly, the referee recommended that respondent be found guilty of violating rule 4-1.6(a) of the Rules Regulating the Florida Bar. As for the discipline, the referee found that respondent was previously sanctioned with a public reprimand in an unrelated case, the case that has now been consolidated with this one. She recommended that respondent receive an admonishment and bear the costs incurred by the Bar.
Preliminarily, we reject respondent's argument regarding the "crime-fraud" exception. The so-called "crime-fraud" exception on which respondent relies states, in relevant part:
(a) Consent Required to Reveal Information. A lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client consents after disclosure to the client.
(b) When Lawyer Must Reveal Information. A lawyer shall reveal such information to the extent the lawyer reasonably believes necessary:
(1) to prevent a client from committing a crime; or

*520 (2) to prevent a death or substantial bodily harm to another.
R. Regulating Fla. Bar 4-1.6.[2] Clearly, subsection (b)(1) of the rule requires lawyers to disclose a client's secrets to prevent the commission of a crime. However, in this case, respondent made no attempt to prevent the commission of a crime in that he neither discouraged Vasquez from hiding evidence of the crimes nor made any attempt to alert law enforcement agencies or the court of the existence of a possible crime.[3] Rather, respondent disclosed Vasquez's confession to two murders previously committed for the purpose of demonstrating possible conflict.[4] Accordingly, this claim is without merit.
Next, we conclude that the referee's findings of fact and recommendation of guilt are supported by competent and substantial evidence.[5] Respondent fails to point to any evidence (or lack thereof) in the record that would vitiate the referee's findings of guilt. Thus, based upon the record evidence in this case, we approve the referee's findings of fact and conclude that respondent violated rule 4-1.6 of the Rules Regulating The Florida Bar.

CASE NO. 87,537
In case no. 87,537, the Bar filed a two-count complaint against respondent, alleging the following violations: Count IViolations of Rules of Professional Conduct 4-1.4(b) (lawyer shall explain matter to extent reasonably necessary to permit client to make informed decisions regarding representation); 4-1.7(b) (lawyer shall not represent client if lawyer's exercise of independent professional judgment may be materially limited by lawyer's responsibilities to another client, third person, or lawyer's own interest); 4-2.1 (lawyer shall exercise independent judgment and render candid advice) and 4-8.4(d) (prohibiting conduct prejudicial to the administration of justice)); Count IIViolations of Rules of Professional Conduct 4-7.1(a) (lawyer shall not make or permit to be made false, misleading, deceptive, or unfair communication about lawyer or his services); and 4-7.2(j) (prohibiting self-laudatory statements in advertisements and written communications. The referee, Judge Moie J.L. Tendrich, found respondent guilty of all the allegations in the complaint. As discipline, Judge Tendrich recommended that respondent receive a public reprimand administered by publication in the Southern Reporter. The following facts are taken from Judge Tendrich's report.

COUNT I
In 1984, respondent accepted an appointment to defend Rickey Bernard Roberts in a capital murder case. Respondent's fee as a specially appointed public defender was limited to $3500. During deliberations, the jury requested a viewing of the alleged crime *521 scene. Respondent failed to object to the jury's request and failed to advise Roberts of his right to be present or his right to have the trial judge present. Respondent's inaction was based solely on his personal financial interests.
Respondent wished to avoid a hung jury since if a retrial occurred, he would remain limited to the original $3500 mandated in special appointed capital cases. Respondent testified at Roberts' 1992 federal habeas evidentiary hearing before Judge King that if the jury did not reach a verdict, he would have to retry the case "for free."[6] He testified that the decision not to object was entirely personal to him and his motivation was not a tactical decision made in the best interest of his client. Respondent allowed his independent professional judgment to be compromised by his own personal financial interests. The referee concluded that respondent violated the Rules of Professional Conduct whether or not he testified truthfully at Roberts' federal habeas hearing before Judge King.

COUNT II
From 1992 to the present, respondent's advertisement in the yellow pages stated, "All Federal & State Court in 50 States." That statement suggests that respondent is admitted to practice in all federal and state courts in fifty states. Respondent is not licensed to practice law in all federal and state courts in all fifty states.
Respondent's advertisement also states, "When the Best is Simply Essential." This statement is self-laudatory and purports to describe the quality of respondent's services. Such statements are prohibited under rule 4-7.2(j) of the Rules of Professional Conduct. Respondent was twice warned by The Florida Bar's Standing Committee on Advertising that possible violations of the Rules of Professional Conduct were contained in his advertisement. Respondent failed to amend his advertisement despite these warnings.

REFEREE'S FINDINGS OF FACT
Regarding Count I, respondent essentially argues that because his is the only sworn testimony on the conflict of interest issue and since the referee did not accept his version of the events, no competent, substantial evidence supports the guilty finding on this count. However, respondent does acknowledge that contrary evidence exists, especially his sworn testimony before Judge King in Roberts' 1992 federal habeas evidentiary hearing. Despite respondent's explanation to the referee of his motivations during Roberts' trial and during his subsequent testimony at the habeas hearing, competent, substantial evidence exists in the record to support the referee's findings of fact on this count.[7]See Florida Bar v. Niles, 644 So.2d 504, 506 (Fla.1994) (reaffirming that "responsibility for finding facts and resolving conflicts in the evidence is placed with the referee").
Regarding Count II, respondent contends that the statement in his advertisement, "All Federal and State Courts in 50 States," in no way implies that he is licensed to practice law in all fifty states. Instead, he argues that the phrase is accurate since the Sixth Amendment right to counsel and the commerce and travel clauses of the United States Constitution allow him to be admitted pro hac vice in all cases and in all courts.[8] We disagree.
Resolution of this issue is not determined by respondent's interpretation of either the commerce or interstate travel clauses of the federal constitution, or the Sixth Amendment right to counsel. Rather, the issue is whether respondent's advertisement was self-laudatory *522 in violation of Rule of Professional Conduct 4-7.2(j), and false, misleading, deceptive, or unfair in violation of rule 4-7.1.
The Bar entered into evidence two letters from its Standing Committee on Advertising which unequivocally warned respondent that they considered his advertisement to be violative of the above Rules of Professional Conduct. Respondent challenged the Bar's assessment in writing, continued to run the ads after being advised to the contrary, and again challenged the Bar's assessment in his testimony before the referee. The referee rejected his explanation and accepted the Bar's evidence as conclusive in establishing the violation. The record supports his finding.[9]Stalnaker; Niles.

APPROPRIATE DISCIPLINE
Finally, we must consider in both cases whether the referee recommended the appropriate discipline. While a referee's recommendation for discipline is persuasive, our scope of review regarding the actual discipline imposed is broader than that afforded the referee's factual findings because we ultimately have the responsibility to order an appropriate sanction. Florida Bar v. Rue, 643 So.2d 1080, 1082 (Fla.1994). In case number 88,694 the referee recommended that respondent receive an admonishment for violation of rule 4-1.6. The Bar, on the other hand, appeals the referee's recommendation and requests that we suspend respondent from the practice of law.[10]
In light of this case's facts, considered together with case number 87,537, we accept the Bar's recommendation that suspension is the more appropriate discipline.[11] In a flagrant disregard for Vasquez's privacy, respondent knowingly offered intricate, damaging information about him at the conflict hearing when a simple, general statement of conflict would have sufficed. Moreover, respondent divulged Vasquez's secrets without obtaining a waiver from him before disclosing to both opposing counsel and the court this privileged information. The information, although conceivably helpful to his present client as impeachment evidence against Vasquez, was injurious to Vasquez, especially since he was never charged with or convicted of such crimes.
Similarly, in case number 87,537 we cannot agree with the referee's recommendation that a public reprimand is the appropriate discipline in this case. For the reasons expressed below, we feel compelled to exercise our authority to impose a more severe sanction.[12]
As a matter of public policy, we have approved public reprimands of attorneys who *523 have published false or misleading advertisements because:
The public should be able to rely on and have confidence in the truthfulness of an attorney's advertisement to the public. In this case, two clients were misled by respondent's false and misleading advertisements. False and deceptive advertising has a great potential for harm, and when an attorney publicly misleads or deceives the public, the public is entitled to be properly informed that such conduct is in violation of this Court's advertising rules and regulations, and that the offending attorney has in fact been disciplined. A private reprimand does not adequately apprise the public of these matters. Only through a public reprimand are the interests of the public protected.
Florida Bar v. Budish, 421 So.2d 501, 503 (Fla.1982); see also Florida Bar v. Herrick, 571 So.2d 1303, 1307 (Fla.1990) (approving public reprimand for violation of former Disciplinary Rule 2-105, which "seeks to restrain advertising which can be false, deceptive, or misleading"). While no evidence was presented that any clients detrimentally relied on respondent's advertisement, the same principle holds due to the self-laudatory and misleading nature of the ad.
However, the referee also found respondent guilty of violations much more serious than those involving his advertisement. The referee noted that, regardless of whether he testified truthfully before Judge King, respondent was guilty of having placed his interests before those of his client and of conduct prejudicial to the administration of justice. Report of Referee at 4. Therefore, while a public reprimand would certainly be appropriate if respondent was guilty of only an advertising violation, Herrick,[13] it is wholly inadequate when respondent's offenses are considered together. See Fla. Stds. Imposing Law. Sancs. 9.22(d) (multiple offenses are one factor that may justify an increase in degree of discipline imposed); see also Florida Bar v. Corbin, 701 So.2d 334, 337 & n. 1 (Fla.1997)(rejecting referee's recommended discipline because of conflict with Court's caselaw). Therefore, we exercise our authority to order a more severe discipline than that recommended by the referee. Rue, 643 So.2d at 1082.
Although not cited by either party, numerous cases from this Court deal generally with discipline imposed for either perjury convictions, false statements to a tribunal, misrepresentations, or conduct prejudicial to the administration of justice. See, e.g., Florida Bar v. Kaufman, 684 So.2d 806 (Fla.1996) (disbarring attorney for five years for engaging in dishonest, fraudulent conduct and conduct prejudicial to administration of justice); Florida Bar v. Segal, 663 So.2d 618, 622 (Fla.1995) (imposing a three-year suspension after concluding that the "[m]aking [of] a knowing misrepresentation to a tribunal is a serious ethical breach"); Florida Bar v. de la Puente, 658 So.2d 65 (Fla.1995) (disbarring attorney for ten years for several instances of misconduct, including the making of false statement to tribunal); Florida Bar v. Kleinfeld, 648 So.2d 698, 701 (Fla.1994) (concurring in recommended three-year suspension and reasoning "[w]e can conceive of no ethical violation more damaging to the legal profession and process than lying under oath, for perjury strikes at the very heart of our entire system of justicethe search for the truth. An officer of the court who knowingly and deliberately seeks to corrupt the legal process can logically expect to be excluded from that process"); Florida Bar v. Machin, 635 So.2d 938 (Fla.1994) (imposing ninety day suspension after finding that attorney's offer to establish trust fund for victim's unborn child constituted conduct prejudicial to administration of justice); Florida Bar v. Smiley, 622 So.2d 465, 467 (Fla.1993) (disbarring attorney and reasoning that a lawyer's false testimony "defeats the very purpose of legal inquiry [and] ... is grounds for disbarment"); Florida Bar v. Rightmyer, 616 So.2d 953, 955 (Fla.1993) (disbarring attorney for trust accounting violations and perjury convictions, observing that "[w]e can conceive of *524 no ethical violations more damaging to the legal profession and process than lying under oath, for perjury strikes at the very heart of our entire system of justicethe search for the truth"); Florida Bar v. O'Malley, 534 So.2d 1159, 1162-63 (Fla.1988) (imposing three-year suspension for testifying falsely under oath during a deposition in a civil litigation case in lieu of disbarment due to significant mitigation).
After comparing respondent's misconduct to that in the cases cited above, we conclude that a one-year suspension as a combined sanction for both cases before us is warranted. As the referee strongly hinted, respondent probably committed what amounted to perjury[14] when testifying before Judge King at Ricky Roberts' federal habeas hearing in 1992.[15] After reviewing the record, we concur with Judge King's assessment that respondent's testimony in the Roberts habeas proceeding was "unworthy of belief." Report of Referee at 3 (quoting Roberts v. Singletary, 794 F.Supp. 1106, 1118 (S.D.Fla. 1992)). We can reasonably infer that respondent lied under oath when testifying before Judge King; respondent's own testimony at the disciplinary hearing essentially admits as much.
Accordingly, Kenneth T. Lange is hereby suspended from the practice of law in Florida for one year. The suspension will be effective thirty days from the filing of this opinion so that he can close out his practice and protect the interest of existing clients. If Lange notifies this Court in writing that he is no longer practicing and does not need the thirty days to protect existing clients, this Court will enter an order making the suspension effective immediately. Lange shall accept no new business from the date this opinion is filed until the suspension is completed.
Pursuant to the provisions of Rule Regulating The Florida Bar 3-5.1(g), upon receipt of this order of suspension, Lange shall forthwith furnish a copy of the order to all his clients with matters pending in his practice. Furthermore, within thirty days of receipt of this order, Lange shall furnish staff counsel of the Bar with a sworn affidavit listing the names and addresses of all clients who have been provided copies of the order. Judgment for costs in the amount of $ 2,290.10 is hereby entered in favor of The Florida Bar against Kenneth T. Lange, for which sum let execution issue.[16]
It is so ordered.
KOGAN, C.J., OVERTON, SHAW, HARDING, WELLS and ANSTEAD, JJ., and GRIMES, Senior Justice, concur.
NOTES
[1] The first time such explanation was offered was in an August 1994 letter by respondent in response to the Bar's inquiry into this matter, approximately two and a half months after respondent was notified that the federal court was forwarding this matter to The Florida Bar.
[2] Similarly, under section 90.502, Florida Statutes (1997): "(4) There is no lawyer-client privilege under this section when: (a) The services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew was a crime or fraud." However, section 90.502 is a rule of evidence, whereas rule 4-1.6 relates to the ethical conduct of attorneys. Even if respondent believed that no attorney-client privilege existed under 90.502, his actions nevertheless were guided by rule 4-1.6, which forbids attorneys to disclose client confidences unless disclosure is necessary to prevent a crime from occurring.
[3] See Florida Bar v. Calvo, 630 So.2d 548, 550 (Fla.1994) (holding that crime-fraud exception ends attorney-client privileges and lawyers should use their services to discourage illegal conduct).
[4] As the referee noted, there was no mention of a cover-up until after respondent became aware that the matter had been forwarded to The Florida Bar.
[5] We have repeatedly stated that a referee's findings of fact carry a presumption of correctness and will be upheld "unless clearly erroneous or lacking in evidentiary support." Florida Bar v. Stalnaker, 485 So.2d 815, 816 (Fla.1986); Florida Bar v. Neely, 502 So.2d 1237 (Fla.1987). If the referee's findings are supported by competent, substantial evidence, we are "precluded from reweighing the evidence and substituting [our] judgment for that of the referee." Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla. 1992). The party contending that the referee's findings of fact and conclusions as to guilt are erroneous carries the burden of demonstrating that there is no evidence in the record to support those findings or that the record evidence clearly contradicts the conclusions. Florida Bar v. Miele, 605 So.2d 866, 868 (Fla.1992).
[6] The federal trial judge, Judge King, rejected Lange's testimony at Roberts' habeas hearing as "unworthy of belief." Report of Referee at 3 (quoting Roberts v. Singletary, 794 F.Supp. 1106, 1118 (S.D.Fla.1992), aff'd, 29 F.3d 1474 (11th Cir.1994)).
[7] E.g., transcript of proceedings before Judge King in Roberts v. Dugger, Case No. 91-571-Civ-King; the opinion in Roberts v. Singletary, 794 F.Supp. 1106 (S.D.Fla.1992); and the January 21, 1995, letter from Chief Judge Tjoflat, Eleventh Circuit Court of Appeals, to the Florida Bar.
[8] Pro hac vice is defined as "[f]or this turn; for this one particular occasion." Black's Law Dictionary at 1212 (6th ed. 1990). As an illustration, "an out-of-state lawyer may be admitted to practice in a local jurisdiction for a particular case only." Id.
[9] Respondent's ad headlined, "When the Best is Simply Essential," violates on its face rule 4-7.2(j)'s prohibition against statements "that are merely self-laudatory or statements describing or characterizing the quality of the lawyer's services in advertisements or written communications." Similarly, the statement, "All Federal & State Courts in 50 States," violates rule 4-7.1(a)'s prohibition of communications that contain "a material misrepresentation of fact or law or omits a fact necessary to make the statement considered as a whole not materially misleading." Because respondent conceded at the hearing before the referee that he is not a member of the bar in all fifty states, omission of that fact from his advertisement is a violation of rule 4-7.1(a) of the Rules of Professional Conduct.
[10] The Bar relies on Florida Bar v. Brennan, 377 So.2d 1181 (Fla.1979) (imposing public reprimand where attorney disclosed client's secrets), and Florida Bar v. Niles, 644 So.2d 504 (Fla. 1994) (imposing one-year suspension where attorney, among other things, permitted television reporter to interview client without obtaining client's consent or waiver of confidentiality). However, neither of those cases is dispositive because the respondent attorneys violated several other rules of professional conduct.
[11] Florida's Standards for Imposing Lawyer Sanctions suggests possible forms of discipline for the violation in the instant case. Rule 4.22 (failure to preserve client's confidences) provides that "suspension is appropriate where the lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client." Rule 4.24, on the other hand, states that admonishment is appropriate when a lawyer negligently reveals information relating to representation of a client and this disclosure causes little or no actual or potential injury to a client.
[12] Because we felt that a more severe sanction was warranted in this case, we gave the parties an opportunity to address that issue in supplementary briefs.
[13] See also Florida Bar v. Budish, 421 So.2d 501, 503 (Fla.1982) (reasoning that a public reprimand for advertising violations ensures that the public is "properly informed that such conduct is in violation of this Court's advertising rules and regulations, and that the offending attorney has in fact been disciplined").
[14] Although respondent has never been charged with or convicted of perjury in this matter, his testimony can be fairly characterized either as a misrepresentation, a false statement to a tribunal, or as conduct prejudicial to the administration of justice.
[15] Respondent tacitly acknowledged his untruthful testimony before Judge King when, several times during the disciplinary hearing, he testified that his "overriding concern was my belief that a hung jury would be in Mr. Roberts' best interests, that we had a real shot to get a compromise verdict of second degree murder." Transcript of disciplinary hearing at 40, May 13, 1996. As to allegedly placing his personal financial interest ahead of his duty to represent his client, respondent unequivocally stated, "You have to understand the context in which I was testifying ... I mean, I was advocating for Mr. Roberts ... [t]here was a sense of advocacy there, even though I was testifying.... If personal considerations were a factor, I wouldn't takeyou wouldn't take one of these death cases and spend a hundred thousand dollars plus of our own time in preparing this kind of case." Id. at 33-34, 43. Therefore, respondent effectively repudiated his own testimony before Judge King.
[16] The judgment amount represents the combined costs of $1,057.00 in case no. 87,537, and $1,233.10 in case no. 88,694.