PER CURIAM.
We have for review a referee’s report recommending that Respondent Petia Dimitrova Knowles be found guilty of professional misconduct and suspended from the practice of law for ninety days. We have jurisdiction. See art. V, § 15, Fla. Const.
The Court previously entered an order in this case suspending Ms. Knowles from the practice of law in Florida. See Fla. Bar v. Knowles, No. SC10-1019, 2012 WL 149335 (Fla. order entered Jan. 17, 2012). This opinion follows.
For the reasons more fully explained below, we approve the referee’s findings of fact, as well as his recommendation that Respondent be found guilty of violating Rule Regulating the Florida Bar 4-8.4(d) (conduct prejudicial to the administration of justice). However, we disapprove the referee’s recommendation that Respondent be found not guilty of violating rule 4-1.6 (confidentiality of information), and his recommendation that Respondent be suspended for ninety days. Considering Respondent’s prior disciplinary history and the seriousness of the misconduct at issue here, we conclude that a one-year suspension is the appropriate sanction.
FACTS AND PROCEDURAL HISTORY
On June 3, 2010, The Florida Bar filed a complaint against Respondent Petia Dimi-trova Knowles, alleging various instances of misconduct relating to her representation of a client in immigration and civil matters. Specifically, the Bar alleged that Respondent had violated Rules Regulating the Florida Bar 4-1.3 (diligence), 4-1.6 (confidentiality of information), 4-3.3 (candor toward the tribunal), 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 4-8.4(d) (conduct prejudicial to the administration of justice). A final hearing was held before a referee, and subsequently the referee filed his report in which he made the following findings of fact.
*920 Respondent was admitted to The Florida Bar on April 22, 2005. In 2007, she represented a client in various immigration matters, including a request for political asylum. Respondent was diligent and ultimately successful in reopening her client’s immigration case. However, on or about January 29, 2009, just four days before a hearing before the Immigration Court, Respondent filed a Motion to Withdraw as attorney of record. In that motion, Respondent asserted that her client had written her an insufficient funds check for $1,000 and implied that the uncollected funds pertained to an immigration matter, when they actually pertained to a prior automobile accident case in which Respondent had also represented her client. Respondent also stated in the motion that she regretted helping her client, who had been rightly convicted for grand theft, and that Respondent’s office had received reports from the Romanian community that her client had robbed them. Respondent asserted in the motion that her client would not be prejudiced by her withdrawal as attorney.
Upon learning that her attorney was attempting to withdraw, the client met with Respondent, and Respondent indicated that she would continue the representation only if the client paid an additional $1,500. The client ultimately agreed to pay $3,000, and Respondent agreed to withdraw her Motion to Withdraw. Respondent filed a Notice of Cancellation of Motion to Withdraw Representation as Attorney, in which she stated that because of short notice, her client would, in fact, be prejudiced if Respondent withdrew representation.
In or about April 2009, the client decided to retain new counsel. Respondent filed a second Motion to Withdraw. However, rather than stating that she sought to withdraw because her client had retained new counsel, Respondent asserted in her motion that she had received more reports that her client had intentionally failed to honor her contractual promises and had refused to pay for fulfilled work assignments.
On or about May 11, 2009, the Assistant State Attorney assigned to the client’s criminal case sent a letter to the Department of Homeland Security. In the letter, the Assistant State Attorney stated that Respondent had informed her that she had reason to believe her client would lie to the Immigration Court at an upcoming hearing. Further, the Assistant State Attorney advised that she had received confidential paperwork pertaining to Respondent’s Ghent’s political asylum case. The paperwork had been sent via Priority Mail on May 7, 2009, from an unidentified source. The referee specifically noted that “[although the sender of the paperwork was unidentified, political asylum files are confidential in nature and not available to the public, and the only person known to be in possession of such paperwork was Respondent.”
In addition to handling the immigration case, Respondent had also represented her client in an automobile accident case. Respondent failed to appear at mediation in that case after filing a Motion to Withdraw, and Respondent also failed to advise her client that a final judgment had been entered.
After making these factual findings, the referee recommended that Respondent be found not guilty of violating rule 4-3.3 (candor toward the tribunal), rule 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), rule 4-1.6 (confidentiality of information), and rule 4-1.3 (diligence).
However, the referee did find that the disparaging motions to withdraw filed by Respondent violated rule 4-8.4(d) (conduct *921 prejudicial to the administration of justice). According to the referee, “regardless of intent, the very act of filing such a motion with such language is so prejudicial to the client so as to be actionable.” The referee stated that it was inconceivable that anyone knowing the rules of ethics would think such statements would be appropriate. Accordingly, the referee recommended that Respondent be found guilty of violating rule 4 — 8.4(d).
Thus, in summary, the referee recommends that Respondent be found guilty of violating rule 4-8.4(d), but be found not guilty of any of the other alleged rule violations. As for discipline, the referee recommends that Respondent be suspended from the practice of law for ninety days and attend The Florida Bar’s Ethics School and The Florida Bar’s Professionalism Workshop. In recommending this sanction, the referee found and considered the following aggravating factors: (1) a pattern of misconduct; (2) multiple offenses; (3) vulnerability of victim; and (4) pending disciplinary case.[1] The referee also found and considered one mitigating factor — absence of a prior disciplinary record. Costs were awarded to The Florida Bar as the prevailing party. The Bar seeks review of the referee’s recommendation that Respondent be found not guilty of violating rule 4-1.6 (confidentiality of information) and the referee’s recommended discipline of a ninety-day suspension.[2]
ANALYSIS
The Bar first challenges the referee’s recommendation that Respondent be found not guilty of violating rule 4-1.6 (confidentiality of information).[3] This Court has repeatedly stated that the referee’s factual findings must be sufficient under the applicable rules to support the recommendations as to guilt. See Fla. Bar v. Shoureas, 913 So.2d 554, 557-58 (Fla.2005). In order to successfully challenge a referee’s recommendation of not guilty as to a particular rule violation in a disciplinary case, “the Bar must demonstrate that there is no evidence in the record to support the recommendation, or that the referee’s recommendation is clearly contradicted by the evidence.” Fla. Bar v. Varner, 780 So.2d 1, 3 (Fla.2001); see Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996).
Rule 4-1.6 provides, in pertinent part, as follows:
*922 (a) Consent Required to Reveal Information. A lawyer shall not reveal information relating to representation of a client except as stated in subdivisions (b), (c), and (d), unless the client gives informed consent.
(b) When Lawyer Must Reveal Information. A lawyer shall reveal such information to the extent the lawyer reasonably believes necessary:
(1) to prevent a client from committing a crime....
R. Regulating Fla. Bar 4-1.6.
The Bar argues that Respondent violated rule 4-1.6 when she called the Assistant State Attorney and stated that she had reason to believe that her client would lie to the Immigration Court. The referee relied on an exception to the rule of confidentiality to find that Respondent did not violate rule 4-1.6 because Respondent would have had a duty to report future criminal conduct.[4] The Bar argues, however, that the exception relied upon by the referee was inapplicable because Respondent disclosed the confidential information to the Assistant State Attorney, when such information should have been disclosed only to the Immigration Court.
We need not address the Bar’s specific contention as to whom the disclosure should have been made. The disclosure was improper on its face and should not have been made to any individual or entity. Rule 4 — 1.6(b)(1) allows a lawyer to reveal confidential information only to the extent the lawyer reasonably believes it necessary to prevent a crime. Here, the referee stated in his report that Respondent had testified that her client had been through numerous attorneys to avoid deportation and had mentioned to her attorney that she would do anything, including lying in court, to avoid deportation. Contrary to the referee’s conclusion, this testimony did not establish that there was a sufficient basis for Respondent to reasonably believe that her client was going to commit a crime by lying to the court at the upcoming hearing. Thus, any communication with any person regarding this confidential information would have been inappropriate under rule 4-1.6(a). Respondent’s conduct in contacting the Assistant State Attorney, when she had no sufficient basis for doing so, was improper. See R. Regulating Fla. Bar 4-1.6 cmt. (stating that “[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client’s informed consent, the lawyer must not reveal information relating to the representation ... [t]his [principle] contributes to the trust that is the hallmark of the client-lawyer relationship”). Further, as previously noted, the Assistant State Attorney indicated that she had received confidential paperwork regarding Respondent’s client’s political asylum case. The referee stated in his report that “political asylum files are confidential in nature and not available to the public, and the only person known to be in possession of such paperwork was Respondent.” This factual finding by the referee indicates that the only person who could have sent the confidential paperwork was Respondent. Accordingly, we find that Respondent violated rule 4-1.6, and we disapprove the referee’s recommendation that Respondent be found not guilty of violating that rule.
As noted, the referee recommended that Respondent be found guilty of violating rule 4 — 8.4(d) (conduct prejudicial to the administration of justice). That rule provides, in pertinent part, that a lawyer shall not *923 (d) engage in conduct in connection with the practice of law that is prejudicial to the administration of justice, including to knowingly, or through callous indifference, disparage, humiliate, or discriminate against litigants....
R. Regulating Fla. Bar 4-8.4(d).
While this recommendation is not challenged, we write to emphasize the inappropriateness of Respondent’s actions in violating her client’s sacred trust. Respondent filed two motions on separate occasions in which she disparaged her client’s character in a reprehensible fashion. Respondent attacked her client’s integrity with regard to her alleged failure to honor checks and fulfill contracts. Respondent further stated that she had heard reports that her client had robbed members of the Romanian community. Finally, and most egregiously, Respondent brazenly asserted that her client had been rightfully convicted for grand theft, and that Respondent actually regretted having helped her client. Such disparaging language is needless and has no place in a public court pleading, especially when the statements are made by an attorney and are directed at the attorney’s own client. Unbridled language of this sort harms the client and causes the public to lose faith in the legal profession. Respondent’s conduct was highly prejudicial to the administration of justice and cannot be tolerated. Accordingly, we approve the referee’s recommendation that Respondent violated rule 4 — 8.4(d).
DISCIPLINE
The Bar challenges the referee’s recommended discipline of a ninety-day suspension and contends that a ninety-one-day suspension is warranted instead. In reviewing a referee’s recommended discipline, this Court’s scope of review is broader than that afforded to the referee’s findings of fact because, ultimately, it is our responsibility to order the appropriate sanction. See Fla. Bar v. Ratiner, 46 So.3d 85, 39 (Fla.2010); art. V, § 15, Fla. Const. However, generally speaking, this Court will not second-guess the referee’s recommended discipline as long as it has a reasonable basis in existing case law and the Florida Standards for Imposing Lawyer Sanctions. See Fla. Bar v. Temmer, 753 So.2d 555, 558 (Fla.1999).
The case law and the Florida Standards for Imposing Lawyer Sanctions support a suspension in this case. See, e.g., Fla. Bar v. Lange, 711 So.2d 518, 522 (Fla.1998) (imposing a one-year rehabilitative suspension where the respondent violated rule 4-1.6 by divulging confidential client communications in two motions filed with the court, among other violations); Fla. Bar v. Morgan, 938 So.2d 496, 499-500 (Fla.2006) (imposing a ninety-one-day rehabilitative suspension where the respondent violated rule 4-8.4(d) and rule 4-3.5(c) and had been disciplined for prior similar misconduct); Fla. Bar v. Hagendorf, 921 So.2d 611, 614 (Fla.2006) (stating that a violation of rule 4-8.4(d) “is a serious violation” and implying that such a violation may warrant suspension); Fla. Bar v. Bloom, 632 So.2d 1016, 1017 (Fla.1994) (imposing a ninety-one-day rehabilitative suspension where the respondent violated rule 4-8.4(d) and rule 4 — 3.4(d)); Florida Standard for Imposing Lawyer Sanctions 4.22 (“[suspension is appropriate when a lawyer knowingly reveals information relating to the representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client”); Florida Standard for Imposing Lawyer Sanctions 7.2 (“[suspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential *924 injury to a client, the public, or the legal system”). Respondent’s recent reprimand for conduct prejudicial to the administration of justice in Case Number SC09-403 further weighs in favor of a suspension. See Fla. Bar v. Knowles, 64 So.3d 1195 (Fla.2011); Florida Standard for Imposing Lawyer Sanctions 8.2 (“[sjuspension is appropriate when a lawyer has been publicly reprimanded for the same or similar conduct and engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession”).
The Bar argues that a ninety-one-day rehabilitative suspension, rather than the referee’s recommended ninety-day suspension, is warranted. We agree that a rehabilitative suspension is appropriate, but given the egregious nature of Respondent’s conduct in this case, we believe that a one-year suspension is necessary. Respondent committed multiple improper acts relating to the representation of her client. Respondent filed two motions to withdraw in which she disparaged her client’s character; she informed the Assistant State Attorney that she believed her client would lie in court; and she sent confidential client paperwork to the Assistant State Attorney. When lawyers desire to withdraw from representing a client, they are not entitled to act in such a manner. A lawyer who is upset with her client is not permitted to turn on her client and begin disparaging and betraying her. Rather, the lawyer must maintain client confidences, even after withdrawing from representation. See Lange, 711 So.2d at 519-20 (where lawyer revealed confidences of a former client in order to demonstrate the existence of a possible conflict, Court found that lawyer violated confidentiality rule).
We previously addressed misconduct of a nature similar to that of Respondent in the case of Florida Bar v. Bailey, 803 So.2d 683 (Fla.2001). There, the respondent had written an ex parte letter to the sentencing judge in his client’s case. In that letter, the respondent had written, among other things, that his client had pled guilty because his client had no defense, not because his client was remorseful or cooperative. Further, the respondent had written that his client was a “multimillionaire druggie.” Id. at 689. The Court ultimately disbarred the respondent for the combined violations of rule 4-8.4(d) (conduct prejudicial to the administration of justice), rule 4-1.6 (confidentiality of information), and many other rules. Id. at 685, 689, 693-95. The Court specifically stated its displeasure at the respondent’s ex parte letter disparaging his client, stating that the respondent
attempted to further his own interests by disparaging his client in an ex parte letter to the judge who would sentence his client. Bailey’s self-dealing constitutes a complete abdication of his duty of loyalty to his client. His willingness to compromise his client for personal gain shows an open disregard for the relationship that must be maintained between attorney and client: one of trust, and one where both individuals work in the client’s best interest. Such misconduct strikes at the very center of the professional ethic of an attorney and cannot be tolerated.
Id. at 694 (emphasis added). In disbarring the respondent, the Court indicated that many of the respondent’s acts, standing alone, would merit disbarment. See id.
Like the respondent in Bailey, Respondent Knowles improperly turned on her client and breached her client’s confidences, in violation of rule 4-8.4(d) and rule 4-1.6. See also Lange, 711 So.2d at 519, 524 (where the respondent, among other violations, had disclosed confidential *925 communications made by a former client, the referee noted that the respondent should have advised the court of the necessary information in generalities and should have sought guidance from the court on how to proceed, and the Court imposed a one-year suspension).
Respondent’s conduct in this matter is impermissible, but is even more egregious in light of the fact that the current bar discipline proceeding is not the first time Respondent has been sanctioned for misbehavior involving conduct prejudicial to the administration of justice. In April 2011, the Court determined that Respondent should receive a public reprimand administered by the Board of Governors of The Florida Bar. See Knowles, 64 So.3d at 1195. The referee in the instant case noted that the previous case involved “similar findings that Respondent engaged in conduct prejudicial to the administration of justice....” Given this prior similar misconduct, the seriousness of Respondent’s misconduct in the instant proceeding, and the aggravating factors, we conclude that the ninety-day suspension recommended by the referee is not sufficient. Further, Respondent’s apparent escalating pattern of misbehavior indicates that a more severe suspension than the ninety days recommended by the referee is appropriate. See Fla. Bar v. Vining, 761 So.2d 1044, 1048 (Fla.2000) (“[i]n determining the appropriate discipline, this Court considers prior misconduct and cumulative misconduct, and treats more severely cumulative misconduct than isolated misconduct”). Therefore, we disapprove the referee’s recommended discipline and instead impose a one-year suspension.
CONCLUSION
We approve the referee’s findings of fact, as well as his recommendation of guilt as to rule 4-8.4(d). However, we disapprove the referee’s recommendation that Respondent be found not guilty of violating rule 4-1.6. We also disapprove the referee’s recommended discipline of a ninety-day suspension. Accordingly, Petia Dimitrova Knowles is hereby suspended from the practice of law for one year. Because Knowles was suspended by order which issued January 17, 2012, it is unnecessary to provide her with thirty days to close out her practice to protect the interests of existing clients. As directed in the January 17, 2012 order, Knowles shall fully comply with Rule Regulating The Florida Bar 8 — 5.1(g) and shall accept no new business until she is reinstated. The suspension shall be effective, nunc pro tunc, February 16, 2012, the effective date of the suspension imposed by the January 17, 2012, order. Knowles is further directed to comply with the terms and conditions set out in the referee’s report requiring her to attend The Florida Bar’s Ethics School and The Florida Bar’s Professionalism Workshop.
Judgment is entered for The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 82399-2300, for recovery of costs from Petia Dimitrova Knowles in the amount of $1,883.70, for which sum let execution issue.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. At the time the referee filed his report on December 16, 2010, Respondent Knowles was the subject of a separate bar discipline proceeding that was pending in this Court (Case No. SC09-403). On April 28, 2011, the Court directed that Respondent receive a public reprimand to be administered by the Board of Governors of The Florida Bar. See Fla. Bar v. Knowles, 64 So.3d 1195 (Fla.2011). The referee in the instant proceeding noted in his report that the prior case, like the instant proceeding, involved findings that Respondent engaged in conduct prejudicial to the administration of justice.

. Respondent filed a cross-petition for review; however, the Court struck Respondent’s cross-initial and answer brief from the record.
After the Court had twice extended the time for Respondent to file her brief, Respondent filed another motion for extension of time, which the Court denied on July 7, 2011. On July 25, 2011, the case was submitted to the Court. On August 16, 2011, Respondent finally attempted to file her brief, along with a "Motion for Leave to File Initial Brief and Answer Brief on the Merits." The Court denied the motion and struck Respondent’s brief from the record.

.The Bar does not raise an express challenge to the referee’s findings of fact, and Respondent's briefs were stricken from the record. Accordingly, the referee's findings of fact are approved.

. See R. Regulating Fla. Bar 4-1.6(b)(1).