472 So.2d 1159 (1985)
THE FLORIDA BAR, Complainant,
v.
Fred J. WARD, Respondent.
No. 64278.
Supreme Court of Florida.
July 3, 1985.
*1160 John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Michael D. Powell and David M. Barnovitz, Bar Counsels, Fort Lauderdale, for complainant.
Richard R. Kirsch, Fort Lauderdale, for respondent.
PER CURIAM.
This cause is before the Court pursuant to our jurisdiction to discipline members of The Florida Bar. Art. V, § 15, Fla. Const. Fla. Bar Integr. R., art. XI, Rule 11.09.
The referee made Findings of Fact and Conclusions of Law and recommended discipline as set forth below.
2. FINDINGS OF FACT AS TO EACH ITEM OF MISCONDUCT FOR WHICH RESPONDENT IS CHARGED:
Having considered all of the pleadings and evidence, I find:
A. Respondent is, and at all times hereinafter mentioned was, a member of The Florida Bar, subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
B. During April 1978, respondent filed an action on behalf of Max Wolkowitz against Saul J. Cooper and Barbara Cooper, his wife, to foreclose a second mortgage on certain real property in Dade County, to wit:
Lot 3, Block 2, Kendall Lane Estates, Section A, according to the Plat thereof, as recorded in Plat Book 86, Page 89, of the Public Records of Dade County, Florida
such action being styled Wolkowitz v. Cooper, Case Number 78-7251, Circuit Court for the Eleventh Judicial Circuit.
C. On December 27, 1978, a Final Judgment of Foreclosure was entered by the court in the case Wolkowitz v. Cooper.

D. On February 12, 1979, the clerk of the court issued to Mr. Wolkowitz a certificate of title for the property in the case Wolkowitz v. Cooper.

E. On January 19, 1979, the Coopers filed a notice of appeal in the case Wolkowitz v. Cooper.

F. On May 18, 1979, Mr. Wolkowitz entered into a written agreement with Augusta Gold, whereby Mr. Wolkowitz agreed to sell to Mrs. Gold or assigns, and Mrs. Gold agreed to purchase from Mr. Wolkowitz, the property described in paragraph B hereinabove.
G. At the time that Mr. Wolkowitz signed such agreement, such signing being accomplished at respondent's law offices, respondent generally advised Mrs. Gold to seek legal counsel on the matter as there existed a "nuisance suit" which involved the property.
H. Between May 18, 1979 and July 24, 1979, Mrs. Gold assigned the agreement to herself and Leonard Gold, her husband.
I. Between May 18, 1979 and July 5, 1979, respondent caused an abstract of title covering the subject property to be delivered to Marshall Fischer, Mrs. Gold's attorney. Such abstract did not include a copy of the notice of appeal filed by the Coopers in the case Wolkowitz v. Cooper.

J. On or about July 5, 1979, Stuart G. Elliot replaced Marshall Fischer as the attorney for Mrs. Gold with respect to the agreement.
K. On or about July 10, 1979, Mr. Elliot wrote to Lawyers Title Guaranty Fund concerning questions he had as to the status of Mr. Wolkowitz's title to the subject property but making no reference, direct or indirect, to the pending appeal.
L. On or about July 11, 1979, in response to Mr. Elliot's letter of July 10, 1979, respondent wrote to Lawyers Title Guaranty Fund, wherein he expressed the view that Mr. Wolkowitz's title to the property vis-a-vis the Coopers was "res *1161 judicata." Respondent made no reference to the pending appeal.
M. On or about July 10, 1979, respondent forwarded to Mr. Elliot copies of pleadings filed by the Coopers, and others, in foreclosure proceedings involving the property. The notice of appeal filed in Wolkowitz v. Cooper was not included and no reference was made thereto.
N. At the closing, despite respondent's and Mr. Wolkowitz's knowledge of the pendency of the appeal in the case Wolkowitz v. Cooper, Mr. Wolkowitz delivered to Mr. and Mrs. Gold a warranty deed and an affidavit of ownership concerning the property, both such documents being prepared by respondent. The affidavit of ownership recited, inter alia, as follows:
"2. That his possession has been peaceful and undisturbed; and that his title thereto has never been disputed, questioned, or rejected.
3. That he has not known of any facts by reason of which his possession of, or title to, the said premises might be disturbed or questioned, or by reason of which any claim to said premises (or any part thereof) or interest therein, adverse to him, might arise or be set up.
4. That no person has any lease, option, deed or contract of any nature whatsoever for the purpose of, or claim to or against such premises, or any part thereof, except as hereinafter stated; that the said premises are now free and clear of all taxes (except taxes for the current year that are a lien against said property but not payable) encumbrances, or liens, by mortgage, decree, judgment, statute, or any other liens of any nature and description, except the following: Subject to an existing first mortgage in favor of Coral Gables Federal Savings and Loan Association with an unpaid balance of $55,462.14."
O. Neither Mr. Elliot nor his clients were aware of the existence of the notice of appeal at the time of the title closing.
P. Upon discovery of the notice of appeal subsequent to title closing the Golds made demand for return of the funds and promissory note delivered at the closing which demand was refused.
Q. On or about August 23, 1979, Mr. and Mrs. Gold filed an action against Mr. Wolkowitz, respondent, and others seeking return of the funds and promissory note they delivered to Mr. Wolkowitz at the closing, plus other damages, such action being styled Gold v. Wolkowitz, et al., case number 79-14582, Circuit Court for the Eleventh Circuit.
R. Respondent appeared as attorney for Mr. Wolkowitz, himself, and respondent's professional association in Gold v. Wolkowitz, et al. and conducted all proceedings in such case on behalf of such parties up until the time of trial.
3. RECOMMENDATION AS TO WHETHER OR NOT RESPONDENT SHOULD BE FOUND GUILTY:
Respondent was charged with violation of Disciplinary Rules 1-102(A)(4), 7-102(A)(7), 5-101(A) and 5-101(B) of the Code of Professional Responsibility. I shall treat each, in turn.
A. I cannot find that respondent, himself, engaged in conduct involving fraud or misrepresentation by failing to provide Attorney Elliot with a copy of the notice of appeal along with the other pleadings in the case of Cooper v. Wolkowitz. While the tenor of such conduct is abhorrent to the spirit and purpose of the disciplinary and integration rules, respondent has not been specifically charged with any such conduct by the bar's complaint and therefore I must find him not guilty of any violation of Disciplinary Rule 1-102(A)(4).
B. Respondent prepared the affidavit of ownership and warranty deed for his client, Mr. Wolkowitz. He thereafter assisted and counseled Mr. Wolkowitz in delivering the affidavit and deed at the closing. Contrary to the plain language on the affidavit no reference as made to any pending appeal. While the appeal was a matter of record, it is abundantly *1162 clear from the totality of the circumstances that neither Mr. Elliot nor his clients were aware of the existence of such an appeal. Therefore, I find respondent guilty of violating Disciplinary Rule 7-102(A)(7) in that his assistance of his client in the preparation and delivery of the affidavit of ownership was conduct which respondent knew to be fraudulent.
C. I find that Mr. Ward's appearance as the attorney for himself, his client, Mr. Wolkowitz, and Mr. Ward's professional association constitutes so fundamental a conflict of interest that the conduct could not be condoned even with disclosure to Mr. Wolkowitz. The conflict existed from the inception of the Gold v. Wolkowitz litigation and it is irrelevant that Mr. Ward intended only to represent Mr. Wolkowitz until such time as it became apparent through the course of litigation that the matter could not be settled and must proceed to trial. The conflict existed whether the case was settled or proceeded to trial. Therefore, I find that Mr. Ward violated Disciplinary Rule 5-101(A) by failing to refuse employment on behalf of Mr. Wolkowitz when Mr. Ward's interests, both financial and professional, must assuredly have impaired or vicissiated [sic] his independent professional judgment.
D. Since Mr. Ward and his professional association and Mr. Wolkowitz were all co-defendants and charged with fraud and misrepresentation, it is obvious that a very real potential existed for Mr. Ward to be called as a witness in his own behalf, on behalf of his professional association, and certainly on behalf of his client, Mr. Wolkowitz, against whom the Golds were seeking both compensatory and punitive damages. Under such circumstances, Mr. Ward by not refusing such employment when he knew that he would have to at one point in the proceedings become a witness, violated Disciplinary Rule 5-101(B).
4. RECOMMENDATIONS AS TO DISCIPLINARY MEASURES TO BE APPLIED:
I recommend as discipline in this matter that respondent be suspended for a period of 30 days.
Respondent, Fred J. Ward, of Hallandale, Florida, disputes both the findings of guilt and the recommended sentence. We have reviewed the record of the hearing and find the referee's determination to be supported by competent and substantial evidence.
We would note that respondent's representation of himself and of his client, discussed in paragraph C of the referee's Recommendation as to Whether or Not Respondent Should Be Found Guilty, arises from circumstances not uncommon in the practice of law. Situations can and do arise in which attorney and client are jointly sued on matters growing out of the representation and, despite the fundamental conflict of interest inherent in such a case, the client insists that the attorney continue in representation as long as possible. The attorney in such instances is bound to avoid even the appearance of impropriety. Fla. Bar Code Prof.Resp., Canon 9. It is therefore incumbent upon an attorney in these straits to document his full disclosure of the conflicts and the possible ramifications of his continued representation in the matter and the client's endorsement of both the disclosure and the representation. Only by such careful documentation can an attorney refute the charge of failure to fulfill the requirements of DR 5-101.
As to the propriety of the discipline, we find that it serves the Bar's goals of protecting the public, deterring others from similar misconduct, and punishing the wrongdoer.[*]
We approve the referee's report and recommendation. Respondent is suspended from the practice of law for thirty days, effective thirty days from the date of this opinion, giving him an opportunity to take *1163 the necessary steps to close out his practice and protect his clients. Costs in the amount of $2,568.75 are taxed against respondent, for which sum let execution issue.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[*] We note in passing that, in the civil suit, respondent was found liable for $50,000 in punitive damages. Gold v. Wolkowitz, 430 So.2d 556 (Fla. 3d DCA 1983).