596 So.2d 433 (1992)
THE FLORIDA BAR, Complainant,
v.
Hans C. FEIGE, Respondent.
No. 76408.
Supreme Court of Florida.
February 13, 1992.
Rehearing Denied May 5, 1992.
John F. Harkness, Jr., Executive Director and John T. Berry, Staff Counsel, Tallahassee, and Kevin P. Tynan, Bar Counsel, Fort Lauderdale, for complainant.
Hans C. Feige, in pro per.
PER CURIAM.
Hans C. Feige petitions this Court to review the referee's findings and recommendations in the instant bar disciplinary proceeding. We have jurisdiction. Art. V, § 15, Fla. Const.
The referee found the following facts based upon the parties' joint pretrial stipulation. As part of their 1975 divorce, Michael Gale and his wife Debra Gale (now Debra Whalen) entered into a property settlement under which Michael Gale was to pay Whalen permanent periodic alimony until Whalen died or remarried. The terms of the agreement were incorporated into the final judgment of divorce. Pursuant to oral agreement, Gale was to pay the alimony to Whalen's attorney in trust for Whalen.
*434 Feige did not represent Whalen in the original divorce proceedings. However, Whalen retained Feige in November 1981 concerning a visitation dispute with Gale. Gale began sending the alimony checks to Feige in trust for Whalen. Whalen remarried in December 1983. Feige performed the marriage ceremony. Whalen and her father told Feige that they had informed Gale of the remarriage and Whalen instructed Feige not to advise Gale of her remarriage. Gale did not learn of Whalen's remarriage until November 1985 and would not have paid the alimony had he known of the remarriage. Between January 1984 and November 1985, Gale made monthly alimony payments to Feige in trust for Whalen totaling $4,200. Pursuant to an agreement with Whalen, Feige kept the money as payment for his representation of her on matters related to the divorce action (but unrelated to the alimony payments).
The divorce decree was modified in 1981 to provide that Gale would pay Whalen up to an additional $50 per month in alimony if Whalen resumed psychiatric or psychological therapy, provided that Whalen made a proper showing that she had incurred such expense. The court file contains no pleadings from Whalen concerning a demand for the additional alimony. Gale did not pay this additional alimony. Feige knew or should have known of the terms and conditions of the Property Settlement Agreement and subsequent court orders related thereto.
Gale filed a lawsuit against Feige and Whalen. Feige represented Whalen in the lawsuit even though he was a defendant in the same lawsuit. Feige was a witness to the events that formed the basis of the lawsuit, but his testimony would have duplicated that of Whalen and/or her father. Whalen and her father were aware of Feige's conflict of interest and consented to his representation notwithstanding the conflict. The suit ultimately was settled. Pursuant to a consent judgment, Feige and his law firm are obligated to pay the balance remaining on the settlement.
The referee found that: (1) Feige had an obligation either to inform Gale of Whalen's remarriage or to stop accepting Gale's alimony checks; (2) by continuing to accept Gale's checks, Feige assisted Whalen in perpetrating a fraud upon Gale and his conduct amounted to theft by fraud; (3) Feige's actions in continuing to accept Gale's checks were fraudulent; (4) Feige was not entitled to offset $50 per month in "additional alimony" because Whalen never made a "proper showing" that she had incurred the requisite $50 of psychiatric treatment; (5) Feige's action in representing Whalen in Gale's lawsuit was unethical; and (6) the conflict of interest was of the type which cannot be consented to by a client.
The referee recommended that Feige be found to have violated the following provisions of the former Code of Professional Responsibility: Disciplinary Rule 7-102(A)(7) (a lawyer shall not counsel or assist his client in conduct that the lawyer knows to be fraudulent); Disciplinary Rule 7-102(B)(1) (a lawyer who receives information that his client has perpetrated a fraud shall call upon his client to rectify same and if the client refuses shall reveal the fraud to the affected person); Disciplinary Rule 5-101(A) (except with client consent, a lawyer shall not accept employment if his professional judgment will be affected by his own financial or personal interest); and Disciplinary Rule 5-101(B) (a lawyer shall not accept employment when he is a witness in the pending litigation). The referee also recommended finding that Feige violated rule 4-1.7(b) of the Rules Regulating The Florida Bar (a lawyer shall not represent a client when the lawyer's exercise of professional judgment may be limited by his own interests).[1] The referee recommended that Feige be suspended from the practice of law for two years.
*435 Feige takes issue with the referee's determination that his conduct violated these disciplinary rules. He argues that in order to inform Gale of Whalen's remarriage, he would have been required to violate his client's confidences and express instructions. This claim is without merit. Whalen's remarriage was not a confidential matter protected by the attorney-client privilege. Moreover, an attorney may not hide behind a client's instructions in order to perpetrate a fraud against a third party. Feige has not provided any support for his claim that Whalen was entitled to offset $50 per month in "additional alimony" against the permanent periodic alimony. The only documents in the record relating to this matter are a letter from Whalen's attorney requesting the additional alimony and a response from Gale's attorney questioning Whalen's entitlement thereto. Whalen never made a proper showing that she had incurred expense for psychiatric treatment. We agree with the referee that the conflict of interest inherent in Feige's representation of Whalen in Gale's lawsuit was so fundamental that it could not be condoned by the client, even with full disclosure. See The Fla. Bar v. Ward, 472 So.2d 1159 (Fla. 1985). Accordingly, we adopt the referee's findings of fact and approve the findings of guilt.
The referee recommended that Feige be suspended from the practice of law for two years. We agree that Feige's misconduct was egregious. He defrauded Gale of more than $4,000 over the course of nearly two years. He used the money to pay himself for fees incurred by Whalen. Feige refused to acknowledge the wrongful nature of his conduct. In addition, he exhibited indifference to making restitution in that he returned the money only after Gale initiated a lawsuit against him. We agree that Feige's conduct warrants a two-year suspension. Accordingly, we accept the referee's recommended discipline. The suspension shall become effective on March 16, 1992, thereby giving Feige time to take the necessary steps to wind up his affairs and protect his clients' interests. Feige shall provide notice to his clients of his suspension and shall accept no new clients from the date of this opinion. Judgment for costs in the amount of $1,411.15 is entered against Feige, for which sum let execution issue.
It is so ordered.
SHAW, C.J., and OVERTON, McDONALD, BARKETT, GRIMES, KOGAN and HARDING, JJ., concur.
NOTES
[1] The referee also recommended finding violations of several general rules: Article XI of the former Integration Rule, rules 11.02(2) and 11.02(3)(a); Disciplinary Rule 1-102(A)(1), (4), (5) and (6), of the former Code of Professional Responsibility; and rules 3-4.2 and 3-4.3 of the Rules Regulating The Florida Bar.