721 So.2d 1164 (1998)
THE FLORIDA BAR, Complainant,
v.
Edward C. VINING, Jr., Respondent.
No. 85235
Supreme Court of Florida.
December 17, 1998.
*1165 John F. Harkness, Jr., Executive Director and John Anthony Boggs, Staff Counsel, Tallahassee, and Elena Evans and Arlene Kalish Sankel, Bar Counsel, Miami, for Complainant.
Edward C. Vining, Jr., Miami, Respondent, pro se.
PER CURIAM.
This disciplinary proceeding is before us upon review of a referee's findings and recommendations. We have jurisdiction. Art. V, § 15, Fla. Const. We approve the referee's findings and accept the recommendation of discipline.

PROCEEDINGS TO DATE
At a hearing before the referee, it was established that in November of 1991, Edward C. Vining was retained by Robert Gusman to represent the Maurice Gusman Residuary Trust No. 1 d/b/a/ The Ingraham Building (the Building). Vining initially wrote a letter to one of the Building's tenants, Byte International Corporation (Byte), demanding compliance with certain provisions in its lease. When Byte did not comply, Vining filed suit against Byte on behalf of the Building. At some point in the litigation, the trial court awarded attorney's fees *1166 in favor of the Building. Byte appealed this award on February 17, 1993, and filed its initial brief on March 30,1993.
On April 14,1993, the Building sent Vining a letter terminating his services. The letter specifically referenced circuit court and county court cases involving Byte and stated that Vining was "discharged from any further work in this case or in any other matters which you may be performing on behalf of the Ingraham Building." The letter also requested that Vining "arrange for the delivery of all file documents relating to this case following your receipt of this letter." On April 16, 1993, the Building's new attorney, Moises Grayson, requested a copy of the files in the Byte case from Vining. Vining refused.[1]
On April 20, 1993, the Building filed suit against Edward C. Vining, Jr., P.A. (the P.A.), a corporate entity formed by Vining and under whose name office space was leased in the Building, for nonpayment of rent. At the time this suit was filed, the Building had not paid Vining for services rendered in the Byte matterin the trial court and on appeal. Vining assigned his claim for fees in the Byte matter to the P.A., and the P.A. counterclaimed for those fees against the Building. The case went to trial, and the Building obtained a judgment against the P.A., which was offset to a certain degree by the amount of unpaid attorney's fees. Through supplemental pleadings, the Building attempted to implead Vining individually and "pierce the corporate veil" with regard to the judgment for rent owed by the P.A. The trial court rejected this claim.
In the meantime, and even after receiving the discharge letter and after the Building sued the P.A., Vining nevertheless continued his representation of the Building and actually filed an answer brief and participated in oral argument in the Byte appeal. On November 8, 1993, Grayson filed a motion for substitution of counsel in the Byte appeal. On November 9, 1993, the district court affirmed the order of the trial court awarding attorney's fees to the Building.
On May 18, 1994, Robert Gusman filed a bar complaint against Vining. On February 4, 1995, the Bar filed a formal complaint against Vining alleging that through his actions in the Byte matter, he violated rule 4-1.2(a) (a lawyer shall abide by a client's decisions concerning the objective of representation and shall consult with the client as to the means by which they are to be pursued); rule 4-1.5 (an attorney shall not enter into an agreement for, charge or collect an illegal, prohibited or clearly excessive fee); rule 4-1.7(b) (a lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest); and rule 4-1.16 (a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the lawyer is discharged) of the Rules Regulating the Florida Bar.
After a hearing, the referee found that for the purpose of the bar proceedings, Vining, the individual, was the same as the P.A. Vining had formed and through which office space was leased. Further, the referee recommended that Vining be found guilty of violating rule 4-1.16, "by continuing to represent the Building after the April 1993, termination of representation letter," rule 4-1.7(b) "by representing the client in an appeal while he himself was being sued by and countersuing the client," and rule 4-1.2(a) "by continuing to pursue the appeal when he had been instructed by the client to terminate his representation." The referee recommended Vining not be found guilty of violating rule 4-1.5.
As to discipline, the referee recommended Vining be suspended for six months. In determining the recommended discipline, the referee considered that "the client suffered injury in that respondent continued to represent the client after he had been discharged and used the hours he worked pursuing the *1167 appeal to offset monies sued for back rent"; that Vining had one prior disciplinary action against him within the last year; that Vining had a self-serving motive in continuing the representation; that Vining refused to acknowledge his actions were wrong; and that Vining had substantial experience in the practice of law. In mitigation, the referee considered character testimony from respected members of the legal and business community.
Although he does not dispute the majority of the material factual findings by the referee, Vining takes issue with her finding that for the purposes of the bar proceedings, he is one and the same as Edward C. Vining, Jr., P.A. Vining also argues that under the circumstances of this case, he should not be found guilty of "continued representation of a client" and that the recommendation of a six-month suspension is excessive.

VINING VS. VINING, P.A.
Paragraph 2 of the referee's findings of fact states, "The Respondent is for the purpose of this proceeding the same as Edward C. Vining, P.A., hereinafter referred to as the Respondent."[2] Vining argues that this finding is unsupported by the evidence.
Initially, we note that it is questionable whether this "finding" is a genuine "finding of fact" in the true sense of the word, since, more than anything else, it appears to be simply for ease of reference by the referee in the report. The referee appears to be asserting that there is no question that the same lawyer, Edward Vining, represented the Building and at the same time his P.A. leased office space in the Building. However, to the extent that it is a finding of fact, Vining's burden on review is to demonstrate "that there is no evidence in the record to support [the referee's] findings or that the record evidence clearly contradicts the conclusions." Florida Bar v. Spann, 682 So.2d 1070, 1073 (Fla.1996); see also Florida Bar v. Jordan, 705 So.2d 1387, 1390 (Fla.1998) (quoting same). Where the referee's findings are supported by competent substantial evidence, "this Court is precluded from reweighing the evidence and substituting its judgment for that of the referee." Florida Bar v. MacMillan, 600 So.2d 457, 459 (Fla.1992); see also Jordan, 705 So.2d at 1390 (quoting same).
Here, the testimony clearly shows that Vining was the sole shareholder of Edward C. Vining, Jr., P.A. Additionally, although, as Vining points out, there is no testimony or other evidence in the record showing that he practiced as a professional association or that the purpose and function of the P.A. was anything other than to lease office space, the referee's finding is not to the contrary. The referee did not find that Vining practiced as a professional association; she simply found that for the purpose of the bar proceedings, Vining the lawyer was the same as the Vining in the P.A.
Vining also argues that because the Building was unable to "pierce the corporate veil" and impose personal liability on him in the litigation against the P.A. for unpaid rent, the referee in these proceedings could not conclude that he and the P.A. were one and the same.[3] Clearly, the referee's finding *1168 in these proceedings is in a completely different context, and she did not determine that Vining and the P.A. were the same for purposes of whether the corporate veil could be pierced. In fact, the referee clearly and appropriately limited her statement to "this proceeding." Accordingly, Vining has not met his burden of showing that there is no evidence to support the finding or that it is clearly contradicted by the evidence.

GUILT
Vining specifically argues that there was insufficient evidence to support the referee's finding that he was guilty of "continued representation of a client"-presumably, violating rule 4-1.16. It is unclear, however, whether he challenges the referee's findings that he also violated rule 4-1.7(b) and rule 4-1.2(a). Vining cites the following circumstances in support of his argument: (1) the timing of his discharge and the filing of the suit against the P.A. shortly before the answer brief in the Byte appeal was due; (2) the failure of the discharge letter to specifically reference the Byte appeal; (3) the failure of the Building's new counsel to substitute himself as counsel in the appeal; (4) Gusman and Grayson's knowledge of his continued work on the Byte appeal; (5) the success of the Byte appeal; (6) the court's finding, in the litigation between the P.A. and the Building, that he was entitled to attorney's fees in part because he had a duty to continue to protect his client's interests in the Byte appeal until new counsel was substituted; (7) the retraction of the Bar complaint by Gusman; and (8) the amicable resolution of all issues between himself, the P.A., and the Building.
Vining appears to argue that these circumstances render his conduct permissible. Thus, in essence he seeks a de novo review of the question of whether his conduct constituted a violation of the rules. However, as noted above, this Court does not conduct a de novo review of the evidence in bar proceedings. Rather, the referee's findings will be upheld if they are supported by competent substantial evidence. Vining does not dispute the basic facts of this case. In light of much of his own testimony, and the record from the hearing, we conclude that the referee's findings are supported by competent substantial evidence and should be upheld.
As to rule 4-1.7(b), the evidence is clear. Rule 4-1.7(b) prohibits representation where a lawyer's independent professional judgment may be materially limited by the lawyer's own interest. Vining does not dispute that he continued to represent the Building in the Byte appeal even after the Building filed suit against the P.A. for unpaid rent and the P.A. counterclaimed against the Building for attorney's fees for services rendered by Vining in the Byte matter. Because of these undisputed facts, we uphold the referee's recommendation that Vining be found guilty of violating rule 4-1.7(b).
Rule 4-1.2(a) requires a lawyer to abide by the client's decisions concerning the objectives of representation and consult with the client as to the means by which they are to be pursued. Vining's own testimony at the hearing admits that he received the discharge letter. This letter clearly instructed him that he was "discharged from any further work in [the specifically referenced] case or in any other matters which you may be performing on behalf of the Ingraham Building." However, when asked what he thought when he received the letter, Vining testified that his "conclusion was that the letter did not mean what it said to the extent that I didn't think Bobby Gusman knew what he was doing." The evidence is undisputed that after receiving the discharge letter, Vining continued representing the Building in the appeal and, in fact, filed an answer brief and participated in oral argument. Thus, it is clear that the referee's finding of guilt as to this rule is supported by competent substantial evidence and should be upheld.
Rule 4-1.16 requires a lawyer to withdraw from representation if the lawyer is discharged. As discussed above, the discharge letter clearly stated that Vining was discharged from representation, and the evidence *1169 is undisputed that despite being discharged, he continued to represent the Building in the Byte appeal. Accordingly, we approve the referee's finding of guilt.

DISCIPLINE
Vining argues that the recommended discipline is excessive. In contrast with a review of a referee's findings of fact, which should be upheld if supported by competent substantial evidence, this Court has a broader scope of review regarding discipline because it bears the ultimate responsibility of ordering the appropriate sanction. Florida Bar v. Vining, 707 So.2d 670, 673 (Fla.1998). However, a referee's recommendation is presumed correct and will be followed if reasonably supported by existing case law and not "clearly off the mark." Id.
In recommending that Vining be suspended for six months, the referee considered: (1) that Vining did not suffer from diminished mental capacity or mental illness which impinged upon his ability to know he was discharged or know that he was being sued by his client; (2) that Vining intentionally continued to represent the client after he had been discharged; (3) that the client suffered injury because Vining used the hours he worked on the appeal after he had been discharged to offset the back rent owed to the client; (4) that the success on the appeal did not diminish the ethical violation; (5) that Vining had one prior disciplinary action in the past year; (6) that Vining had a self-serving motive in continuing the representation after being discharged; (7) that Vining refused to acknowledge he was wrong in continuing to represent the client; and (8) that Vining had substantial experience in the practice of law. In mitigation, the referee considered character testimony from a number of respected members of the legal and business community.
While the Bar has cited no cases involving conduct identical to Vining's, his conduct is similar to conduct occurring in other cases where we have imposed suspensions.[4]See, e.g., Florida Bar v. Sofo, 673 So.2d 1 (Fla. 1996) (imposing ninety-one-day suspension where attorney engaged in dual representation of two companies with adverse interests and where attorney owned stock in both corporations); Florida Bar v. Marke, 669 So.2d 247 (Fla.1996) (imposing thirty-day suspension where attorney represented two clients despite conflict of interest); Florida Bar v. Mastrilli, 614 So.2d 1081 (Fla.1993) (imposing six-month suspension where attorney filed suit against client on behalf of second client and showed "no remorse for his actions"); Florida Bar v. Feige, 596 So.2d 433 (Fla.1992) (imposing two-year suspension where attorney represented client in suit where he was also a defendant and defrauded the client's husband of money which he used to pay his own fees); Florida Bar v. Hayden, 583 So.2d 1016 (Fla.1991) (imposing six-month suspension where, against client's wishes, attorney filed motion for contempt against client's ex-husband and refused to withdraw motion until his fees were paid). Thus, at first blush, a six-month suspension in this case seems appropriate, especially in light of the referee's findings as to the intentional nature of Vining's conduct, the harm suffered by the client, Vining's self-serving motive, his refusal to acknowledge the wrongfulness of his conduct, and his substantial experience in the practice of law.
In addition, after the referee's report was issued but before the petition for review was filed in this case, we suspended Vining from the practice of law for three years in another disciplinary matter. See Florida Bar v. Vining, 707 So.2d 670 (Fla.1998) (Vining I). In this previous matter, Vining was found guilty of engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and conduct prejudicial to the administration of justice. *1170 Id. at 671-72. The improper conduct occurred in connection with a dispute between Vining and a client over fees, during which the client eventually filed suit against Vining and was awarded damages for conversion and civil theft. Finding that Vining was guilty of multiple offenses of serious misconduct which exposed him to harsher discipline than may ordinarily be warranted, but noting that the referee "believed respondent acted because he felt he had a legitimate claim to the disputed funds," we concluded that a three-year suspension was warranted. Id. at 674.
Although the briefs in this case were filed after this Court's decision in Vining I, the Bar does not argue for a more severe discipline in light of that decision. Additionally, although the factual scenario involved in Vining I concluded in September of 1993 when the client ultimately obtained a judgment against Vining, it appears from the opinion that the majority of Vining's misconduct in that case actually occurred between 1984 and 1988.[5] Considering all these circumstances, we conclude that a six-month suspension is appropriate here.

CONCLUSION
As discussed above, the referee's findings are supported by competent substantial evidence in the record and are hereby approved. We also agree with the referee's recommended sanctions. Accordingly, Vining is hereby suspended for a period of six months, such suspension to run concurrently with the suspension in Vining I. In addition, the costs incurred by the Bar in these proceedings are taxed against Vining in the amount of $5,067.32, for which sum let execution issue.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN, WELLS, ANSTEAD and PARIENTE, JJ., concur.
NOTES
[1] Grayson made a subsequent request for the files on July 13, 1993, and also filed a motion to obtain the files. Although the motion was denied, Vining provided Grayson a copy of the files shortly thereafter.
[2] The referee's reference to "Edward C. Vining, P.A." is technically incorrect. The professional association's name is Edward C. Vining, Jr., P.A.
[3] The point of Vining's argument in this regard is unclear. Presumably, however, he wishes to distinguish himself as an individual from the P.A. to avoid a finding that he represented a client at a time when the client was suing him and he was countersuing the client. In other words, he wishes to suggest that it was permissible for him, as an individual, to represent the Building at a time when the Building was suing the P.A. and the P.A. was countersuing the Building on a claim for attorney's fees assigned by him, as an individual, to the P.A. This is clearly incorrect. Rule 4-1.7(b) states that "[a] lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by... the lawyer's own interest, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Clearly, under this rule, "the lawyer's own interest" includes the lawyer's interest in a professional association of which he is the sole shareholder. Certainly, given Vining's relationship to the P.A. and that the issue of his own attorney's fees was being litigated in the suit by the Building against the P.A., his independent professional judgment in representing the Building in another matter could have been materially limited. Even if it were arguable that the representation would not be adversely affected, Vining never consulted with the client or obtained consent to continue the representation. Accordingly, even given the legal difference between Vining the individual and the P.A., he still violated this rule.
[4] The referee's recommendation that Vining be suspended is also generally supported by the Florida Standards for Imposing Lawyer Sanctions. Standard 4.32 applies in "cases involving conflicts of interest" and states that, in the absence of mitigating or aggravating circumstances, "[s]uspension is appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict and causes injury or potential injury to a client." Additionally, Standard 7.2 states that "[s]uspension is appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system."
[5] The dispute over the fees between Vining and the client began sometime in 1984. See Vining I, 707 So.2d at 671. Then, apparently in March of 1988, Vining filed a misleading stipulation of payment with the court and obtained an order directing the disbursement of the disputed funds to Vining. Id. at 672 n. 9. After learning of this, the client sued Vining and, in September of 1993, was awarded damages. Id. at 672.